268 N.J. Super. 165 (1993)
632 A.2d 1270
STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION AND ENERGY, PLAINTIFF-RESPONDENT,
v.
PAUL S. DOPP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 21, 1993.
Decided November 5, 1993.
*168 Before Judges BRODY, STERN, and KEEFE.
Cullen and Dykman, attorneys for appellant (William R. Hoatson, of counsel; Kevin M. McEwen, on the brief).
Fred DeVesa, Acting Attorney General, attorney for respondent (Joseph L. Yannotti, Assistant Deputy Attorney General, of counsel; Sushila Nanda, Deputy Attorney General, on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
This matter was initiated on July 27, 1990 when DEPE employee Barbara Cowan conducted a field investigation of property in Bernards Township owned by defendant's wife, Layte S. Dopp, and discovered a small pond on the premises. The parcel fronts on a lake which is part of a tributary to Harrison's Brook. The wetlands associated with the property and lake are classified as being of exceptional value. Cowan observed that a tributary (presumably to Harrison's Brook) passed through the pond en route to the lake. While defendant advised Cowan that the lake *169 was already in existence when his wife purchased her home, Cowan's review of 1988 aerial photographs showed no pond in the tributary on the property. She therefore recommended that DEPE issue a notice of violation (NOV) for construction of a pond without DEPE authorization. In this initial encounter  and throughout the negotiations with DEPE in this matter  defendant, rather than his wife, responded to DEPE inquiries.
On August 23, 1990, DEPE issued a NOV to defendant advising him that the "stream pond" required both a stream encroachment permit under the Flood Hazard Area Control Act and a permit under the Freshwater Wetlands Protection Act (FWPA). Defendant was offered one of two alternatives: he could submit the required permits and applications within 30 days, or propose a mitigation plan for restoring the site. With respect to the FWPA violation, defendant also had the opportunity to demonstrate that the activity was exempt from the FWPA.
Defendant responded by denying that he had constructed the pond and by insisting that Cowan, in her July inspection, had assured him that no work done on the property had adversely affected wetlands. He requested a meeting with DEPE officials, copies of the 1988 aerial photographs, and copies of the statutes referenced in DEPE's letters.
On October 4, 1990, DEPE advised defendant that a meeting would be unproductive in light of the several options offered to him. It also explained that the aerial photographs were not available for distribution, but that defendant could make an appointment to review them. It concluded with the admonition that failure to comply with the NOV by October 22, 1990 would result in further enforcement proceedings. The compliance date was subsequently extended to January 2, 1991 at defendant's request.
On April 15, 1991, defendant advised DEPE that he had retained an engineering firm and would satisfy DEPE's requirements by May 1. Defendant's engineering consultants eventually submitted the appropriate stream encroachment applications and *170 DEPE now considers the Flood Hazard Area Control Act violations to have been cured.
However, no progress was made on the FWPA violations and, on July 1, 1991, DEPE issued a Letter and Administrative Order and Notice of Civil Administrative Penalty Assessment. The order directed defendant to submit a mitigation proposal within 30 days and imposed a penalty of $85,500. Defendant was informed he had a right to request a hearing within 20 days and that, if no such request was made, the order would become a final order on the twenty-first day after its entry and the penalty would become due and payable.
Defendant did not request a hearing. However, defendant's representatives continued to deal with DEPE. A July 23, 1991 "memo to the file" by defendant's engineer, Mark Platz, memorialized a conversation with DEPE's Cowan. Platz reported that he had told Cowan that initial investigations indicated that "any disturbance" on the property had served to enhance the environment and could be the basis for an application supporting the completed work. The memo also noted that Cowan had been advised that there was no ongoing work on the project so that the "cease and desist" portion of the administrative order had been fully complied with.
Also on July 23, 1991, defendant's counsel wrote DEPE, advised it that he had been retained by defendant, and requested an opportunity to review defendant's file and the aerial photographs. He also requested a forty-five day stay of any further action by DEPE.
No DEPE response is included in the record, but a certification by defendant's counsel, submitted to the trial court, stated that he reviewed the aerial photographs on microfilm on May 21, 1992 at DEPE offices but was unable to distinguish the property. The attorney's certification continued that he had informed DEPE that he would require hard copies of the photographs, which were never forwarded by DEPE.
*171 On June 9, 1992, almost one year after the administrative order became final, DEPE filed a verified complaint against defendant. It alleged that at all relevant times defendant had been married to Layte S. Dopp, the owner of the property, and averred that defendant did not respond in any way to the administrative order, which became final on July 22, 1991. It sought injunctive relief directing defendant to complete restoration work on the property and sought collection of the full civil administrative penalty assessment of $85,500. It further sought the imposition of a civil penalty of up to $10,000 per day pursuant to N.J.S.A. 13:9B-21(e) for failure to comply with the administrative order.
An Order to Show Cause was issued requiring defendant to appear on June 30, 1992 and state why a permanent injunction should not be issued, pursuant to the Attorney General's complaint, after a summary proceeding pursuant to N.J.S.A. 13:9B-21, N.J.S.A. 2A:58-1, and R. 4:67 and R. 4:70.
Defendant filed a notice of motion to dismiss the DEPE complaint, along with a brief in support thereof. Defendant raised essentially the same issues he now presents on appeal. In his brief, defendant advised the court that he had not informed his wife of the "taking of her property without due process" since she had been preoccupied with the illness and death of her mother.
At the close of argument the court directed defendant to complete the FWPA applications required by the order and imposed a $10,000 fine. The judge reasoned that he was presiding over a court of equity and did not have to impose the full penalty sought by DEPE. He said that he had considered the fact that defendant was a private homeowner in fixing the amount of the fine.
An order to this effect was entered on July 13, 1992. Defendant was given until August 30, 1992 to pay the penalty. He was also directed to submit, by that date, a completed application for a freshwater wetlands permit and any necessary plans for restoration/mitigation of the freshwater wetlands affected by his construction activities, including the pond. The order further directed *172 that the restoration or mitigation be completed within 90 days of defendant's receipt of DEPE's written approval of his plans. It is not clear from the order or from the record whether DEPE contemplated that defendant would be allowed to retain the pond, subject to some restoration of the surrounding area, or whether he would be required to fill it in. Defendant then filed this appeal.

I
Defendant's contention that DEPE's complaint should have been dismissed on the grounds that Cowan's verification was defective because it was based on "information and belief" rather than personal knowledge, as required by R. 4:67-1 and R. 1:6-6, is without support.
R. 4:67-6, "Summary Proceedings to Enforce Agency Orders," applies to all actions by a state administrative agency brought to enforce a written order or determination entered by it, whether the order to be enforced requires the payment of money or imposes a non-monetary requirement or includes a combination of monetary and non-monetary remedies. R. 4:67-6(a). All such actions must be brought in accordance with R. 4:67-1, which governs most summary actions in which a court is permitted by rule or statute to proceed in a summary manner. R. 4:67-6(b). R. 4:67-1 excludes from its scope actions for the recovery of penalties under R. 4:70. R. 4:70-1 in turn states that "[a]ny penalty imposed by any statute or ordinance which may be collected or enforced by a summary civil proceeding shall be collected and enforced pursuant to R. 4:70 in every court upon which jurisdiction is conferred by the statute imposing the penalty."
DEPE relied on both 4:67-6 and 4:70-1 in instituting this action. Both rules apply in that DEPE sought to enforce its administrative order, collect its administrative penalty and asked the court to impose a "civil penalty" under N.J.S.A. 13:9B-21e (person who violates the act or an administrative or court order issued under it may be subject, upon order of a court, to a civil penalty not to *173 exceed $10,000 per day). R. 4:70-1(b) is broader in scope than R. 4:67-6 and essentially encompasses all aspects of the complaint here, because R. 4:70-1(b) provides that claims for recovery of a penalty may include a count for injunctive or other relief provided that the claims are authorized by statute or ordinance, are founded upon a single transaction or a series of transactions, and provided further that such action be commenced in a court having jurisdiction to grant injunctive relief.
R. 4:70-2 specifically states that if a proceeding under the rule is instituted by a governmental body or officer, the verification of the complaint may be made on information and belief by any person duly authorized to act on its or his behalf. Even if this were not the case, Cowan is the DEPE employee who actually inspected the property in question, observed the pond, and ascertained that it was not shown on aerial photographs taken of the parcel before Layte Dopp acquired it. It would exalt form over substance to find the complaint deficient because it stated it was based on Cowan's "information and belief" when she was capable of submitting the affidavit based on personal knowledge.

II
Defendant contends that the FWPA is unconstitutional "in that it fails to provide due process requirements for the owners of real property affected by the [DEPE's] actions." However, the judgment under review is directed to defendant and not Layte Dopp, the owner of the property. The NOV, the administrative order and the judgment under review were directed to defendant as a possessor of real property. Such action by DEP is authorized by the FWPA. See N.J.S.A. 13:9B-21a; N.J.S.A. 13:9B-3. Defendant does not challenge the constitutionality of the act as applied to him. Thus, he asserts the issue of unconstitutionality as applied to his wife, a non-party owner of the property.
DEPE contends that defendant lacks standing to assert the issue. We agree. "Ordinarily, a litigant may not claim standing to assert the rights of the third party." Jersey Shore *174 Medical Center v. Estate of Baum, 84 N.J. 137, 144, 417 A.2d 1003 (1980), especially where one attempts to seek standing "`to vindicate the constitutional rights of some third party.'" In re of Trial Lawyers of America, 228 N.J. Super. 180, 188, 549 A.2d 446, certif. denied, 113 N.J. 660, 552 A.2d 180 (1988) quoting Singleton v. Wulff, 428 U.S. 106, 114, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826, 833 (1976). This is so, because courts are loath to resolve constitutional issues in advance of necessity. State v. Engel, 249 N.J. Super. 336, 363, 592 A.2d 572 (1991), certif. denied, 130 N.J. 393, 614 A.2d 616 (1992).
Defendant's reliance on Jersey Shore Medical Center v. Estate of Baum, supra, to support his claim of standing is unfounded. In that case, as a practical matter, there was no party other than the hospital who could have asserted the deceased husband's constitutional right. Thus, because the hospital would have been adversely affected if it could not have advanced the issue, the Court granted it standing. That is not the situation here. If Mrs. Dopp considered herself aggrieved by the proceedings, she could have intervened in the Law Division enforcement proceedings. The $10,000 administrative penalty entered against defendant does not create "adverseness" in the context addressed in the Jersey Shore Medical Center case. Jersey Shore Medical Center, supra, 84 N.J. at 144, 417 A.2d 1003. As noted, the penalty was issued against defendant as a possessor. Regardless of the constitutionality of the statute as applied to Mrs. Dopp, the penalty remains enforceable as to this defendant. Thus, his success or failure in this litigation does not rise or fall on the constitutional question. We note further that defendant does not maintain an inability to comply with the administrative order or judgment by reason of his lack of control over the property, or relationship with the owner of the property. If compliance with the administrative order and judgment impacted on the property owner's rights, such defense should have been raised in the Law Division either by defendant or by the intervention of Mrs. Dopp.

*175 III
Defendant's contentions that the administrative order is invalid because DEPE failed to disclose the investigative report and aerial photographs which form the basis of its case, and because DEPE failed to prove a violation of the FWPA, is not cognizable at this juncture.
The enforcement scheme outlined in R. 4:67-6 and R. 4:70 militates against defendant's raising the issues in this context. In Dept. of Community Affairs v. Wertheimer, 177 N.J. Super. 595, 600, 427 A.2d 592 (1980), this court rejected an allegation that appellants had a right to a full factfinding proceeding in Superior Court to contest the validity of the agency's penalties. We emphasized that, under R. 4:70-4(b), the appellants' right to a review of the penalties was provided by a timely request for an administrative hearing, with appellate review in the Appellate Division. Ibid. The same analysis pertains here. Defendant had a right to contest the validity of the order at an administrative hearing but, having failed to do so, is now barred from challenging the factual predicates underlying it. In particular, defendant has lost his opportunity to counter DEPE's assertion that he constructed the pond on the property. Necessarily flowing from that factual underpinning is the finding that the construction of the pond is a regulated activity within the meaning of N.J.S.A. 13:9B-3. The fact that he is a possessor of the property, rather than the owner, is of no meaningful consequence in this context. Clearly, the Legislature recognized that possessors of property may be just as injurious to the environment as property owners.

IV
Defendant insists that the equitable doctrines of estoppel and laches bar DEPE from enforcing the order against him. We disagree.
Equitable estoppel is the effect of the voluntary conduct of a party whereby the party is absolutely precluded, both at law *176 and in equity, from asserting rights which might have otherwise existed, as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse. W.V. Pangborne & Co., Inc. v. New Jersey Dept. of Transportation, 116 N.J. 543, 553, 562 A.2d 222 (1989). Although rarely invoked against public entities, O'Malley v. Dept. of Energy, 109 N.J. 309, 316, 537 A.2d 647 (1987), it may be applied against them to prevent manifest injustice. Anske v. Borough of Palisades Park, 139 N.J. Super. 342, 348, 354 A.2d 87 (1976).
Defendant's theory is that, on the initial field inspection, Cowan informed him that none of the work completed on the property had adversely affected wetlands. Assuming for the moment that defendant had availed himself of the opportunity to demonstrate that Cowan had made such a representation, he would still not satisfy the requirements of equitable estoppel.
First, it is not clear what "work" Cowan assertedly referred to. It may have been the clearing of vegetation to which defendant admitted. In any case, this single comment cannot reasonably have caused defendant to rely to his detriment on an assumption that DEPE would not take action against him. The field inspection was followed promptly by a half-dozen letters threatening imposition of penalties if defendant did not comply with DEPE directives. Moreover, defendant's improper conduct preceded his conversation with Cowan: it did not follow it. Hence, defendant cannot say that he relied on Cowan's statement to his detriment.
Defendant's assertion that DEPE's action is barred by laches is also meritless. Laches is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. Lavin v. Hackensack Bd. of Educ., 90 N.J. 145, 151, 447 A.2d 516 (1982) quoting Atlantic City v. Civil Service Comm'n, 3 N.J. Super. 57, 60, 65 A.2d 535 (1949). Whether or not it is inequitable to allow a claim to be enforced will generally turn on whether an adverse party has been harmed by the delay. Lavin, supra, 90 N.J. at 153, 447 A.2d 516.
*177 Defendant maintains that DEPE's "laches" in enforcing environmental laws against upstream property owners resulted in the pond on Layte Dopp's property becoming a "refuse dump," thereby forcing defendant to clean up the dead vegetation and refuse in the ponds and triggering the DEPE action against him. This argument is misconceived. DEPE would be barred by laches from asserting a claim against defendant if it had delayed unreasonably in enforcing environmental statutes against him. Defendant makes no such claim and, indeed, DEPE promptly followed up throughout 1990 and 1991 on the initial field inspection report and in issuing the administrative order. In any case, DEPE did not move against defendant for clearing vegetation: it objected to the construction of a pond. Thus, even if DEPE had been dilatory in enforcing claims against other property owners, that delay did not, even in defendant's view, require him to construct a pond.
Affirmed.