713 A.2d 546

K.D., A JUVENILE,[1] PLAINTIFF–APPELLANT/ CROSS–RESPONDENT, v. BENNETT E. BOZARTH, J.M.C., DEFENDANT–RESPONDENT, AND PEMBERTON TOWNSHIP MUNICIPAL COURT; PEMBERTON TOWNSHIP, A BODY POLITIC, THALIA C. KAY, MAYOR OF PEMBERTON TOWNSHIP; AND PEMBERTON TOWNSHIP COUNCIL, DEFENDANTS–RESPONDENTS/ CROSS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued June 1, 1998—Decided June 29, 1998.

---

[1] Plaintiff initiated this lawsuit as a class action. The class was never certified, however, and has therefore been removed from the caption.

564

Before Judges HAVEY, NEWMAN and COLLESTER.

*Mark J. Molz* argued the cause for appellant/ cross-respondent (*Mr. Molz*, attorney; *Stephen Cristal*, on the brief).

*Paul A. Snyder* argued the cause for respondent Bennett E. Bozarth (*Marshall, Dennehey, Warner, Coleman & Goggin*, attorneys; *Mr. Snyder* and *Michelle L. Maute*, on the brief).

*John C. Gillespie* argued the cause for respondents/cross-appellants Pemberton Township, Thalia C. Kay, and Pemberton Township Council (*Barron & Gillespie*, attorneys; *Mr. Gillespie*, on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

Plaintiff K.D. appeals from the grant of summary judgment, dismissing her complaint against defendants, Bennett E. Bozarth, J.M.C., and Pemberton Township Municipal Court, Pemberton Township, Thalia C. Kay, Mayor of Pemberton Township, and the Pemberton Township Council (hereafter the township defendants). The township defendants cross-appeal from the order denying an award of counsel fees sought pursuant to *R.* 1:4–8 and 42 *U.S.C.A.* § 1988. We affirm both the direct and cross-appeals.

These are the relevant facts which are essentially undisputed. In April 1995, K.D., then fifteen years old, was charged in Pemberton Township Municipal Court with driving on the revoked list, following too closely, and being an unlicensed driver. Appearing *pro se*, she pleaded guilty to all charges. Judge Bozarth imposed fines totalling $750 plus costs and suspended her driving privileges for six months after she became eligible. However, at K.D.'s request, the fines and costs were converted to 277 hours of community service.

In March 1996, Burlington County Probation notified Judge Bozarth that, despite various warnings, K.D. had completed only thirty-seven hours of her community service, and that she had also

failed to perform any of the forty hours of service imposed on unrelated charges of underage drinking and shoplifting. Probation asked the judge to resentence K.D. and to relieve it from supervising her case.

By notice of March 29, 1996, the municipal court ordered K.D. to appear on May 6, 1996 to show cause why she "should not be held in contempt of court for failure to perform Community Service." K.D. appeared *pro se* at the May 6, 1996, hearing before Judge Bozarth. When the judge asked her whether she had failed to perform her community service, she responded: "No, I did go to community service. And, the few times I missed, either due to snow storms, the fact that they were moving, I was moving a lot of things."

Judge Bozarth granted Probation's request to resentence K.D. He converted the remaining fines and days of community service to fourteen days in jail, imposing one day in jail for each $50 of unpaid fine. The judge ordered that her jail term begin on May 24, 1998, two days after she turned eighteen, and ordered her to present herself on that date.

K.D. filed a timely appeal of her sentence to the Burlington County Superior Court. The court vacated K.D.'s guilty plea and sentence and remanded the motor vehicle charges to the Pemberton Municipal Court for adjudication.

In November 1996, K.D. filed a Law Division complaint against Judge Bozarth, the township defendants and various fictitious-name townships, municipal courts, mayors, councils, and council members. K.D. claimed to be acting on behalf of a class consisting of all juveniles who had received delayed jail sentences from Judge Bozarth in New Jersey's municipal courts. The complaint alleged that (*l*) Judge Bozarth did not have jurisdiction to sentence K.D. to fourteen days in jail, (2) Judge Bozarth and the township defendants violated 42 *U.S.C.A.* § 1983, and (3) all defendants conspired to violate K.D.'s civil rights, contrary to 42 *U.S.C.A.* § 1985. The complaint made similar allegations against the fictitious-name defendants.

Judge Bozarth filed a *pro se* answer denying the key allegations and asserting various defenses, including judicial immunity. The township defendants also filed an answer denying the key allegations and asserting many defenses, including immunity and failure to state a claim. They then moved for summary judgment and counsel fees, calling the complaint a "publicity stunt by the plaintiff's attorney." Judge Bozarth moved to dismiss the complaint for failure to state a claim.

Plaintiff filed motions to change venue and to obtain partial summary judgment on the issue of Judge Bozarth's alleged immunity. In January 1997, Judge Wells advised the parties that he would be transferring the matter to another county, in view of the fact that the case challenged some "administrative aspects" of the Pemberton Municipal Court, over which he, as assignment judge, had "some responsibility." Accordingly, the matter was transferred to Judge Holston of the Gloucester County Superior Court.

The motions were argued before Judge Holston on February 21, 1997. In an oral opinion, Judge Holston ruled that Judge Bozarth was immune from the suit because he did not act in clear absence of all jurisdiction. The judge reasoned that, in resentencing K.D., Judge Bozarth acted only in excess of his jurisdiction.

With respect to the township defendants, Judge Holston ruled that they had no judicial authority and thus could not be liable for the alleged harm to K.D. However, he denied their request for counsel fees.

We will address the issues affecting Judge Bozarth separately from those of the township defendants.

## I.

On appeal, K.D. contends that Judge Holston erred in ruling that Judge Bozarth was entitled to judicial immunity from her federal civil rights action. She argues that Judge Bozarth lacked subject matter jurisdiction over what she asserts was a contempt proceeding and, therefore, he could not claim immunity.

Judges are absolutely immune from liability for their judicial acts. *Hawkins v. Harris,* 141 *N.J.* 207, 214, 661 *A.*2d 284 (1995); *Cashen v. Spann,* 66 *N.J.* 541, 545–47, 334 *A.*2d 8, *cert. denied,* 423 *U.S.* 829, 96 *S.Ct.* 48, 46 *L. Ed.*2d 46 (1975); *Delbridge v. Schaeffer,* 238 *N.J.Super.* 323, 333, 569 *A.*2d 872 (Law Div. 1989), *aff'd o.b. sub nom., A.D. v. Franco,* 297 *N.J.Super.* 1, 687 *A.*2d 748 (App.Div.1993), *certif. denied,* 135 *N.J.* 467, 640 *A.*2d 849 (1994), *cert. denied,* 513 *U.S.* 832, 115 *S.Ct.* 108, 130 *L. Ed.*2d 56 (1994). The immunity applies even as to judicial acts that are wrong, malicious, or beyond the judge's authority. *Delbridge, supra,* 238 *N.J.Super.* at 334, 569 *A.*2d 872. Its purpose is to encourage judges to decide cases independently and without fear of being held accountable in damages to a disappointed litigant. *Cashen, supra,* 66 *N.J.* at 546–47, 334 *A.*2d 8; *Delbridge, supra,* 238 *N.J.Super.* at 334, 569 *A.*2d 872. The ban against suing judges is also justified by the availability of other safeguards against judicial error, especially the right to appeal. *Delbridge, supra,* 238 *N.J.Super.* at 335, 339, 569 *A.*2d 872. It is well settled that judicial immunity applies to § 1983 actions such as this one. *Briscoe v. LaHue,* 460 *U.S.* 325, 334, 103 *S.Ct.* 1108, 1115, 75 *L. Ed.*2d 96 (1983); *Pierson v. Ray,* 386 *U.S.* 547, 553–54, 87 *S.Ct.* 1213, 1217, 18 *L. Ed.*2d 288, 294 (1967).

Judicial immunity has two prerequisites: 1) the act complained of must be a "judicial act;" and 2) the judge must have subject matter jurisdiction at the time he or she acts. *Delbridge, supra,* 238 *N.J.Super.* at 335, 569 *A.*2d 872. A "judicial act" is one normally performed by a judge in his judicial capacity. *Ibid.* In this case it is undisputed that Judge Bozarth's resentencing of K.D. constituted a "judicial act."

Whether a judge has subject matter jurisdiction "must be broadly construed" in the immunity context, such that "immunity will be denied only where the judge acted in the clear absence of all jurisdiction," as when a probate court tries a criminal case. *Id.* at 336–37, 569 *A.*2d 872. However, if a judge merely exceeds his jurisdiction—as when a criminal court judge convicts a defen-

dant of a nonexistent crime—the judge would be immune. *Id.* at 337, 569 *A.*2d 872 (relying in both instances on examples offered by the United States Supreme Court). *See Stump v. Sparkman,* 435 *U.S.* 349, 357 n. 7, 98 *S.Ct.* 1099, 1105 n. 7, 55 *L. Ed.*2d 331, 339 n. 7 (1978).

*N.J.S.A.* 2B:12–17(b) confers upon the municipal court the jurisdiction to adjudicate "[v]iolations of the motor vehicle and traffic laws." A municipal court may sentence a violator to prison and may impose a fine. *N.J.S.A.* 2B:12–22,–23. A person who defaults on a fine "may be ordered to perform community service in lieu of incarceration or other modification of the sentence with the person's consent." *N.J.S.A.* 2B:12–23(a). Failure to meet a community service obligation authorizes the municipal court to "revoke its community service order and impose any sentence consistent with the original sentence." *N.J.S.A.* 2B:12–23(b). *N.J.S.A.* 39:5–36 allows imprisonment for one who has defaulted on paying any fines, the duration of which is to be calculated at no more than one day for each $20 of the fine, not to exceed three months.

The Family Part of the Superior Court has "exclusive jurisdiction in all cases where it is charged that a juvenile has committed an act of delinquency and over all matters relating to a juvenile-family crisis." *N.J.S.A.* 2A:4A–24. An act of "delinquency" is defined as an act by a juvenile which, if committed by an adult, would be a crime, disorderly persons offense, or violation of any other penal law. *N.J.S.A.* 2A:4A–23.

Specifically excluded from the category of delinquent acts, however, are motor vehicle violations by juveniles of any age. *N.J.S.A.* 2A:4A–23. As to those violations, the municipal court has jurisdiction. Whenever a municipal court sentences a juvenile to a term of imprisonment for a motor vehicle violation, that sentence "shall be served at a suitable juvenile institution and not at a county jail or county workhouse." *N.J.S.A.* 2A:4A–23.

K.D. asserts that Judge Bozarth's action on May 6, 1996 should be treated as a proceeding for contempt, a separate crime, rather than a mere conversion of her original sentence into a period of

incarceration. In so arguing, K.D. relies on the "contempt" references in the order to show cause and sentencing sheet, insisting that they conclusively establish that Judge Bozarth found K.D. guilty of a newly charged criminal offense under *N.J.S.A.* 2C:46–2(a)(4). We disagree.

The circumstances reflect that Judge Bozarth had no reason to doubt that he had jurisdiction to convert K.D.'s sentence and enforce the sentence that he previously entered or revise it based on K.D.'s noncompliance with her court-ordered community service obligation. As contemplated by *N.J.S.A.* 2B:12–23, the office in charge of monitoring K.D.'s community service notified Judge Bozarth of her non-compliance and requested that he resentence her. At the May 6, 1996 hearing, at no time did Judge Bozarth state that K.D. was subject to contempt, and he did not expressly hold her in contempt. Rather, he converted her fines into days in jail, adding that he was granting the "probation department's request to have you resentenced." The sentencing sheet reflected the date of conviction as "4/19/95," the date of the original sentence.

To deem the two written "contempt" references as dispositive would be to exalt form over substance. The real thrust of the May 6th proceeding was to modify K.D.'s original sentence to substitute incarceration for community service. Whether that be labelled a contempt proceeding (as Judge Holston assumed for motion purposes), or instead a resentencing under the municipal-court statute (*N.J.S.A.* 2B:12–23), Judge Bozarth clearly had general subject matter jurisdiction. His various sentencing errors were later fully remedied on appeal. Insofar as this civil action was concerned, he was protected by judicial immunity. The complaint filed against him was properly dismissed.

## II.

Plaintiff argues that Judge Holston prematurely granted summary judgment to the township defendants. She asserts that she should have been permitted to conduct discovery to gather sup-

port for her claims that those defendants violated § 1983 by encouraging Judge Bozarth's violations of the constitutional rights of K.D. and other juveniles whom she sought to certify as a class.

A municipality may be liable under § 1983 only when the alleged injury was caused by a policy, practice or custom adopted, either formally or in fact, in an area in which the municipality was authorized to act. *McMillian v. Monroe County,* 520 *U.S.* 781, ——, 117 *S.Ct.* 1734, 1736, 138 *L. Ed.*2d 1, 7 (1997); *Monell v. Department of Soc. Serv. of City of New York,* 436 *U.S.* 658, 690–91, 98 *S.Ct.* 2018, 2035, 56 *L. Ed.*2d 611, 635 (1978); *C.P. by J.P. v. Township of Piscataway Bd. of Educ.,* 293 *N.J.Super.* 421, 434–35, 681 *A.*2d 105 (App.Div.1996). If the municipal body or official in question had no legal authority to decree policy or to otherwise act on the subject matter, the municipality itself cannot be liable. *City of St. Louis v. Praprotnik,* 485 *U.S.* 112, 123, 108 *S.Ct.* 915, 924, 99 *L. Ed.*2d 107, 118 (1988); *C.P., supra,* 293 *N.J.Super.* at 434–35, 681 *A.*2d 105. It is not enough that the conduct of municipal employees has "the 'potential' to become official policies or may be 'perceived as' official policies." *Praprotnik, supra,* 485 *U.S.* at 125 n. 2, 108 *S.Ct.* at 925 n. 2, 99 *L. Ed.*2d at 119 n. 2.

It is clear that the township defendants had no power over the decision-making of Judge Bozarth. *Kagan v. Caroselli,* 30 *N.J.* 371, 153 *A.*2d 17 (1959) is the controlling authority. There, our Supreme Court discussed the nature of a municipal judge's duties, explaining that,

> [a] magistrate does not exercise the "judicial" power, authority, or duty of a municipality. On the contrary, his court is an integral part of a state-wide judicial system, and the judicial power he exercises is the judicial power of the State. *Krieger v. City of Jersey City,* 27 *N.J.* 535, 539, 143 *A.*2d 564 (1958). The Constitution provides "The judicial power shall be vested in a Supreme Court, a Superior Court, County Courts and inferior courts of limited jurisdiction." *Art.* VI, § I, *par.* 1. The municipal court, as an inferior court of limited jurisdiction, shares in this single power. Quite obviously the board of commissioners is not an inferior court of limited jurisdiction. It possesses no portion of this judicial power and hence has none to distribute to a department of the city.

> [*Id.* at 377, 153 *A.*2d 17.]

The Court observed that, while the governing body was empowered by the Legislature to appoint the magistrate in cities having Jersey City's form of government, "in exercising the appointive power, the governing body acts merely as a statutory agent." *Id.* at 379, 153 *A.*2d 17. The governing body, however, can exert no control over the magistrate's judicial functions:

> The powers and duties of the office of magistrate are not appropriate to any of the departments of local government. Indeed they are not appropriate to the board of commissioners itself. The Constitution places the administrative control of the municipal court in the Supreme Court and the Chief Justice. *Art.* VI, § 2, *par.* 3; *Art.* VI, § 7, *par.* 1. There is no room for divided authority. The constitutional plan assures to the magistrate independence of local government and the 1948 statute was designed to preserve it.
>
> *[Ibid.]*

Where, as here, the municipality possesses no legal control over the judicial function of its municipal court, it cannot be liable for that court's alleged breaches of constitutional rights of parties appearing before it. In *Eggar v. City of Livingston,* 40 *F.*3d 312 (9th Cir.1994), *cert. denied,* 515 *U.S.* 1136, 115 *S.Ct.* 2566, 132 *L. Ed.*2d 818 (1995), defendants brought a § 1983 action against a municipal court judge and the city, alleging that the city had a policy of imprisoning indigent defendants without offering appointed counsel, which policy had been implemented by the judge in their cases. In upholding the district court's grant of summary judgment to the city, the Ninth Circuit stressed that, under Montana state law, a municipal court judge is a state, not a local, official, and that, therefore, the city had no control over the judge in his judicial capacity and "thus could not be responsible for his acts." 40 *F.*3d at 315. The court explained:

> The Judge's failure to follow state law or federal constitutional law does not transform his "cattle-call" method of counseling into municipal policy-making. As state law makes clear, the Judge's obligation to address the rights of defendants arises from his membership in the state judiciary. It is lamentable, but irrelevant, that he failed miserably to meet this obligation under both state and federal standards: he simply is not a municipal decision maker in this context. *See also City of St. Louis v. Praprotnik,* 485 *U.S.* 112, 126, 108 *S.Ct.* 915, 925–26, 99 *L. Ed.*2d 107 (1988) ("[A] federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it.")

> A similar analysis defeats plaintiffs' theory of liability based on policy and custom. Because [the municipal judge] was functioning as a state judicial officer, his acts and omissions were not part of a city policy or custom. A municipality cannot be liable for judicial conduct it lacks the power to require, control, or remedy, even if that conduct parallels or appears entangled with the desires of the municipality.

[*Id.* at 315–16 (footnotes omitted).]

*See also Meek v. County of Riverside,* 982 *F.Supp.* 1410, 1414–15 (D.Cal.1997); *Johnson v. Moore,* 958 *F.*2d 92, 94 (5th Cir.1992); *Woods v. City of Michigan City, Indiana,* 940 *F.*2d 275, 279 (7th Cir.1991) (all holding that a judge's status as a state officer precludes liability of the city for the judge's conduct).

Here, Judge Bozarth's adjudicatory role was governed by state law and court rules. The township had no power to dictate the way in which he disposed of cases. Hence, under the principles of the case law interpreting § 1983, the township defendants were entitled to summary judgment.

Moreover, the five memos alleged by K.D. to be evidence of township complicity in Judge Bozarth's § 1983 violations fall well short of K.D.'s characterization of them. Each is a memo from Judge Bozarth to the mayor or mayor and council with copies to the Assignment Judge in which he catalogues the success of his tough-minded approach to drunk-driving offenses and encourages the township to seek even more funding for the municipal court. Nothing about them suggests the need for further discovery. Judge Holston properly found no incriminating or sinister impact in the memos. Even if they were viewed differently, the township defendants were excusable as a matter of law.

## III.

Plaintiff claims that she is still entitled to "the disclosure of the names of the juveniles sentenced in Pemberton Township Municipal Court to adult prisons," so that they can be "informed that their constitutional rights have been violated and that post-conviction relief is probably still available to them." That informa-

tion, she acknowledges, "is in the public realm and accessible under 42 *U.S.C.* Section 1983 and *N.J.S.A.* 47:1A–1 et seq."

First, defendants were entitled to summary judgment for the reasons previously discussed. Thus, there remain no liability claims to which the request for names may be pertinent. Second, as plaintiff represents, she may obtain those names through other means; hence she is not "aggrieved" by the failure of the trial court to order that defendants provide them. Third, as plaintiff unsuccessfully sought to represent a class of all aggrieved juveniles, she may not now assert the constitutional rights of others not party to the suit. *See State Dept. of Environmental Protection and Energy v. Dopp,* 268 *N.J.Super.* 165, 173–74, 632 *A.*2d 1270 (App.Div.1993).

## IV.

The township defendants cross-appeal from the trial court's denial of their motion for counsel fees under *R.* 1:4–8 and 42 *U.S.C.A.* § 1988. They insist that plaintiff filed the complaint to garner publicity for plaintiff's counsel and harass and embarrass defendants. They contend that K.D.'s counsel knew or should have known that the complaint's legal claims had no chance of success, and that, therefore, the action was frivolous.

Judge Holston denied the request:

> I've been asked to impose sanctions on the basis that under Rule 1:4–8 that the filing of these complaints is frivolous litigation at least to Pemberton Township. And such, defendant[s] seek counsel fees arguing the litigation is frivolous. But I believe the litigation was [premised] on at least plaintiff's good faith belief that the defendant Judge Bozarth acted in violation or an absence of all jurisdiction and that he was not protected by judicial immunity.

> Further, that in good faith they felt that these letters directed to the mayor were so improper that they represented some interference by the executive branch of the municipality with the affair of the municipal court.

> And while I'm satisfied that in this case and the facts in this case giving all inferences to the plaintiff that absolute judicial immunity applies, I'm not going to impose any sanctions.

Under the circumstances of this case, we are satisfied that Judge Holsten's exercise of discretion in denying counsel fees should not be disturbed.

Affirmed as to direct and cross-appeals.