782 A.2d 430 (2001)
344 N.J.Super 371
The GLEN, Section I Condominium Association, a New Jersey Corporation, Plaintiff-Appellant,
v.
John H. JUNE, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted September 11, 2001.
Decided October 12, 2001.
*431 Singer & Fedun, Belle Mead, attorneys for appellant, (Michael Fedun, of counsel and on the brief).
Respondent did not file a brief.
Before Judges SKILLMAN, WALLACE and WELLS.
The opinion of the court was delivered by WELLS, III, Judge.
Plaintiff, The Glen, Section I, Condominium Association (Association), which sued defendant, John H. June, Jr., for $9925, appeals from a judgment of the Law Division, Somerset County, signed September 1, 2000, which found that it owed June $5.80. That part of the same order which directed the Association to remove a lolly column placed directly in front of June's garage on September 1, 2000, or suffer a fine of $500 per day, was not appealed.
The trial judge also dismissed June's counterclaim for $1000 under the Federal Fair Debt Collections Practices Act, 15 U.S.C.A. §§ 1692-1692o, and no appeal has been taken from that determination. June's brief has been suppressed.
The facts, as we glean them from the record, are as follows: Plaintiff is entrusted under the New Jersey Condominium Act (the Act), N.J.S.A. 46:8B-1 to -38, with the maintenance of common areas (common elements) of the condominium complex in which the Association members own units. N.J.S.A. 46:8B-14. The Association is managed by a board of directors elected from among the unit owners. N.J.S.A. 46:8B-12.1. The directors had engaged Oldwick Community Resources, Inc. (Oldwick) as the professional property manager to run the condominium day-to-day. June, a member of the Association by virtue of his ownership of a unit, ceased paying his assessments in 1996 as the result of financial difficulties which culminated in his filing a bankruptcy petition on March 11, 1997. Because of June's alleged uncertainty as to his obligation to pay following his bankruptcy, he continued not to pay any assessments from April 1997 to November 1998. The monthly assessment for common area maintenance from April 1997 through December 1997 was $130. That assessment increased to $140 per month beginning in January 1998. June's pre-April 1997 obligation was ultimately discharged in bankruptcy.
On September 29, 1998, Oldwick at the behest of the directors wrote June a letter which recited his history of non-payment and prohibited June from the use of "any portion of the common elements for the purpose of parking, driving or storing any vehicle owned by you." The letter threatened the installation of "a four (4) inch lolly column immediately behind the garage serving your unit." The letter demanded immediate payment of the unpaid assessments. Oldwick wrote June again in October 1998. It sent a detailed account of the amount due and stated that while June's bankruptcy petition filed in March 1997 "wiped out" his obligation to the Association prior to that date, assessments accruing since then remained due and owing.[1] *432 At the end of October 1998, June made two payments, one for $750 and one for $140. In January 1999, Oldwick wrote June a third time. It acknowledged the receipt of the two payments and suggested that June pay $750 monthly to liquidate the accrued balance plus the regular monthly payment. It stated the "lolly column installation will take place."
According to Oldwick's president, Bielenica, the lolly column was installed in January 1999. He stated that the opinion of the directors was "to try to get Mr. June to settle this matter a long time ago." He testified that it remained there to the time of trial in August 2000. Bielencia also identified photographs of snow being piled up in June's driveway but denied that either he or the directors had so ordered. In March 1999, the Association filed its complaint to recover the unpaid assessments, late fees, interest and counsel fees accrued to that time, and reserved the right to seek such assessments accruing to the date of trial. The Association introduced evidence at trial to show that for the period from December 2, 1998 to August 18, 2000, the trial date, June owed unpaid assessments of $2245, late fees of $340, fines of $110 and counsel fees and costs of $7230.51 for a total of $9,925.51.
The court determined June's obligation to the Association as follows:

1997  9 months (April to December)
 @ $130. $1170.00
1998  9 months (January to September)
 @ $140. $1260.00
 ________
Total Assessments $2430.00
Interest 151.20
1997 Late fees 117.00
1998 Late fees 126.00
Counsel fee 1000.00
 ________
Total $3824.20

The judge found that June did not owe anything from October 1998 to August 2000 (the month of the trial) because "by virtue of the letter of September 29th written by the association to Mr. June, ... they in effect told him he was out of the association, he had no rights in the association, and I find absolutely no reason why the association could continue to charge him dues when they put him out of the association." The judge then credited June with the payments he actually made beginning in October 1998 through August 2000, $1030 for 1998, $1680 for 1999, and $1120 for 2000. These calculations left a credit balance in June's favor of $5.80 which the judge ordered credited against his October 2000 monthly assessment.
*433 The court next turned to the issue of attorney's fees. Noting that N.J.S.A. 46:8B-21 authorizes a condominium association to charge a nonpaying member with "reasonable" attorney's fees, the court determined that the accrual of $7000 in attorney's fees to collect a $2800 judgment was not reasonable. According to the court,
My problem in this case is that the plaintiff, knowing that this statute exists, has no reason to do anything other than turn their attorney loose to collect as much as they want against the defendant because the association is not going to pay it, and I don't find that that's reasonable.
The court determined that a reasonable fee for the services performed by plaintiff's counsel was $1000, and awarded that sum. In so finding, the court specifically stated that "there's no need for counsel to submit to me an affidavit under R. 4:42-9 because I think I can make that determination." The court also demanded that plaintiff remove the column which was blocking the defendant's driveway.
Our analysis begins with the Act. The obligation to pay assessments stems from the ownership of a condominium unit. The Act provides:
A unit owner shall, by acceptance of title, be conclusively presumed to have agreed to pay his proportionate share of common expenses accruing while he is the owner of a unit. However, the liability of a unit owner for common expenses shall be limited to amounts duly assessed in accordance with this act, the master deed and by-laws. No unit owner may exempt himself from liability for his share of common expenses by waiver of the enjoyment of the right to use any of the common elements or by abandonment of his unit or otherwise. The common expenses charged to any unit shall bear interest from the date set by the association at such rate not exceeding the legal interest rate as may be established by the association or if no rate is so established at the legal rate.
[N.J.S.A. 46:8B-17.]
The obligation to pay condominium fees has been described as "unconditional." For example, the Chancery Division has stated:
Among the powers assigned by law to a condominium association is the authority to assess and collect funds for the payment of common expenses. N.J.S.A. 46:8B-14.
....
A unit owner's obligation to pay common expenses is unconditional. N.J.S.A. 46:8B-17. Each unit expenses proportionate to his or her undivided interest in the common elements.
....
Failure to pay assessed common expenses automatically gives rise to a lien against the owner's unit in favor of the association.
[Holbert v. Great Gorge Village South Condominium Council, Inc., 281 N.J.Super. 222, 226, 656 A.2d 1315 (Ch.Div.1994).]
The master deed of the condominium complex in question reflects the Association's power to collect mandatory assessments, and explicitly empowers the Association to suspend a member's enjoyment of the common elements until such fees are paid. The deed states:
ARTICLE III
PROPERTY RIGHTS IN THE COMMON PROPERTIES
....
Section 2. Extent of member's Easements. The rights and easements of *434 enjoyment created hereby shall be subject to the following:
(a) The rights of the Community Association, as provided in its By-Laws to:
....
(iii) Suspend the enjoyment, right and privileges of all Members and Associate Members of a condominium or other entity if that condominium or entity has not paid its assessments. Said rights will be suspended until payment in full of the assessments due plus interest accrued thereon.
Nothing in the Act or in Article III of the master deed suggests that by suspending a member's privileges to enjoy the common elements, the Association revokes a unit owner's membership in the Association. Such a conclusion is inconsistent with the premise, expressed in statute, that a unit owner cannot escape the obligation to pay fees simply by waiving membership in the Association. N.J.S.A. 46:8B-17.
There is thus no authority that supports the trial court's conclusion that Oldwick's letter of September 29, 1998, or its later installation of the lolly column acted as a revocation of membership in the Association which absolved June of his obligation to pay the monthly assessments. The fact that June continued to own a condominium unit results in membership in the Association, and an attendant obligation to pay his share of the expenses.
The Association insists that its action in placing the lolly column in June's driveway amounted to a "lawful invocation of its provisions under the master deed regarding the power to deny members of the Association the use of the common elements during the period of time when they refuse to pay common expense assessments."
We disagree. It is true that, as discussed infra, the master deed of the condominium complex affords the plaintiff the power to deny access to the common elements to any Association member who fails to pay the monthly assessment. However, an examination of the definition of "common elements" under the Act suggests that the placing of the column in the driveway was not an acceptable exercise of that power:
d. "Common elements" means:
....
(iii) yards, gardens, walkways, parking areas and driveways, excluding any specifically reserved or limited to a particular unit or group of units[;]
[N.J.S.A. 46:8B-3 (Emphasis added.) ]
Here, the trial court saw photographs of the column placed outside June's home.[2] Viewing these exhibits the court concluded that "[A]nyone with an ounce of common sense knows it's Mr. June's driveway...." The finding of fact that the driveway was meant for the exclusive use of June results in the legal conclusion that June's driveway falls under the exclusion from "common elements" for driveways "specifically reserved or limited to a particular unit or group of units" as mandated under N.J.S.A. 46:8B-3d(iii).
The trial court's fact finding in this matter should not be disturbed by this court unless to do so would work an injustice. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974). From the evidence available in the record, it was reasonable to find that the driveway in question was one over which June had exclusive control. This seems a logical finding, because if the installation of the lolly column had burdened anyone other than June, the Association *435 would probably have considered it an unfeasible method of debt collection.
Additionally, the installation of the lolly column had the effect of depriving June of the enjoyment of his own garage. Nowhere in the record does the plaintiff suggest that the garage itself falls into the category of "common element." In fact, the plaintiff's sole witness noted at trial that it "is [June's] garage," and that "[e]veryone has a garage in that cluster."
Between the fact that the driveway appears to have been for the sole use of June, and the fact that the installed column blocked June's access to his own garage, it is plain from the record that the Association's actions were impermissible under the master deed or New Jersey law. Rather than preventing June from using common areas of the complex or enjoying the privileges of membership in the Association, the plaintiff instead prevented June from using property that obviously falls outside the definition of "common elements."
The court also found, as a matter of fact, that snow had been deliberately piled in June's driveway at the behest of the plaintiff "to humiliate Mr. June and in fact embarrass him in front of his neighbors." The plaintiff contends that the trial court heard no evidence which would support such a finding. We disagree. First, the trial court heard evidence from the property manager that "I basically direct the snowplow people, but that would not have come fromit [an order to pile snow in June's driveway] was not an order from us." Second, the court saw photographs of a snowplow piling snow onto June's driveway. From those two pieces of evidence, the trial court could have reasonably inferred that, given the fact that the snowplow operator took instructions from plaintiff's property manager, the snow was probably piled onto June's driveway at the behest of the plaintiff. Therefore, the plaintiff's insistence that there was no evidence to support the trial court's finding of fact is simply incorrect.
As we recently stated:
A condominium association stands in a fiduciary relationship to the unit owners. That relationship requires that it act consistently with the Condominium Act and its own governing documents and that its actions be free of fraud, self dealing, or unconscionability. Moreover, that fiduciary relationship requires that in dealing with unit owners, the association must act reasonably and in good faith. If a contested act of the association meets each of these tests the judiciary will not interfere.
[Kim v. Flagship Condo. Owners Ass'n, 327 N.J.Super. 544, 554, 744 A.2d 227 (App.Div.2000) certif. denied, 164 N.J. 190, 752 A.2d 1292 (2000).]
Here, the court essentially found that when the plaintiff deprived the defendant of the use of his driveway and then deliberately piled snow onto it with the intent of humiliating the defendant, it violated its duty of good faith and fair dealing. Such a finding creates a basis for affording relief to June but one which is different from that found by the trial judge.
Thus, the judge's conclusion that the Association acted beyond its powers in installing the lolly column and that it sought to humiliate June by piling snow in his driveway was correct as was his conclusion that June was damaged. But his solution to simply relieve June from the obligation to pay lawfully imposed assessments was in error.
Accordingly, we remand to the trial judge for retrial limited to the issue of damages that June suffered resulting from the Association's breach of its duty of good *436 faith and fair dealing by denying access to June's driveway and garage from January 1999 to the date of removal of the lolly column. Those damages are measured by the reasonable value of the loss of use of June's driveway and garage for the period he was deprived thereof. The amount found shall be set off against June's obligation for the common areas assessments for the period in question between April 1997 through August 2000. June shall, of course, be credited with any payments he made during that period. The judge should also recalculate the interest award.
We also reverse the trial judge's determination with respect to counsel fees. Under the Act, "[t]he association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of the common expenses or otherwise, together with interest thereon, and, if authorized by the master deed or by-laws, reasonable attorney's fees...." N.J.S.A. 46:8B-21.
The rule governing the application for counsel fees under the Act is R. 4:42-9(a)(8). Island House Condo. Ass'n. v. Feldman, 245 N.J.Super. 407, 411, 585 A.2d 982 (Ch.Div.1990). It provides that counsel fees are allowable "[i]n all cases where counsel fees are allowed by statute." The rule also establishes a very specific protocol for application for counsel fees in such an instance. Thus,
Except in tax and mortgage foreclosure actions, all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a). The affidavit shall also include a recitation of other factors pertinent in the evaluation of the services rendered, the amount of the allowance applied for, and an itemization of disbursements for which reimbursement is sought.
[R. 4:42-9(a)(8)(b).]
The comment explains,
[P]aragraph (b) as adopted as part of the 1969 revision was a new provision which filled a gap in the source rules by requiring not only that an affidavit of services be filed in support of every fee application (except in tax and mortgage foreclosure actions) but also specifying the contents of the affidavit. The rule was amended, effective September, 1971, to add the information to be included in the affidavit, the amount of the estate or fund, the responsibility assumed, the results obtained, the time spent by paraprofessionals (accountants, investigators and the like), and other pertinent factors. The purpose of the amendment was to provide a more accurate catalogue of the factors to be considered by the court in fixing the fee and to deemphasize the factor of the attorney's time spent, which is in itself often an unreliable guide but too often overemphasized by the cour[t]. This paragraph of the rule was again amended effective February, 1989 ... [to include] in lieu of the therefore stated details of the services required to be enumerated, ... cross references to RPC 1.5(a).
[Pressler, Current N.J. Court Rules, comment 3 on R. 4:42-9 (2002) (emphasis added).]
As noted supra, the trial court specifically refused counsel's attempt to submit an affidavit. Instead, the court, without any justification for his award, asserted that
I don't know of anyone that would pay $7000 in attorney's fees to collect a judgment on slightly over $2,800. It is not reasonable. I can only, therefore, and will only award counsel fees reasonably related to what should have been done in this case. That fee that I'm allowing *437 is the sum of $1000, which I believe adequately compensates counse[l].
Because the court's decision clearly contravene the purpose of R. 4:42-9(a)(8)(b), we remand to the trial court for a determination of reasonable attorney's fees that is based upon the proper submission of an affidavit of services.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] This appears to be correct under the Bankruptcy Code, which states:

A discharge ... does not discharge an individual debtor from any debt
....
(16) for a fee or assessment that become due and payable after the order for relief to a membership association with respect to the debtor's interest in a dwelling unit that has condominium ownership or in a share of a cooperative housing corporation, but only if such fee or assessment is payable for a period during which
(A) the debtor physically occupied a dwelling unit in the condominium or cooperative project[;]
[11 U.S.C. § 523(a)(16).]
[2] The photographs are not included in the record provided us.