918 A.2d 666 (2007)
391 N.J. Super. 419
FIRST ATLANTIC FEDERAL CREDIT UNION, Plaintiff,
v.
Charles S. PEREZ, Defendant, and
Bank of America, Defendant-Appellant,
v.
United Check Cashing, Third-party Defendant-Respondent, and
JP Morgan Chase, Third-party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 2007.
Decided March 27, 2007.
*668 Daniel Barros argued the cause for appellant Bank of America (Sodini & Spina, attorneys; Mr. Barros, on the brief).
Megan K. McKeever, argued the cause for respondent Lira Capital Corporation d/b/a United Check Cashing (Cammarata, Nulty & Garrigan, attorneys; Ms. McKeever, on the brief).
Before Judges LEFELT, PARRILLO and SAPP-PETERSON.
The opinion of the court was delivered by
PARRILLO, J.A.D.
Defendant/third-party plaintiff Bank of America (BOA) appeals the final judgment *669 denying its motion for attorney's fees against third-party defendant Lira Capital Corp. (Lira Capital). We affirm.
The essential facts are not in dispute. Defendant Charles Perez secured a car loan from plaintiff First Atlantic Federal Credit Union (First Atlantic) and granted First Atlantic a security interest in a vehicle that was subsequently damaged in an accident and deemed a total loss. As a result, Perez's auto insurance carrier, Allstate of New Jersey Insurance Company (Allstate), issued a check directly to Perez in the amount of $4,221.96 in satisfaction of his claim under his policy. The check was jointly payable to Perez "and First Atlantic FCU" and drawn on Allstate's account with BOA. Perez thereafter presented the check to Lira Capital d/b/a United Check Cashing[1], which cashed the check without the endorsement of First Atlantic as co-payee and gave the proceeds to Perez.
First Atlantic then sued Perez and BOA to recover the proceeds of the check, alleging that Perez had deposited the check into his account at BOA and that BOA had negotiated the check without the proper endorsement.[2] BOA in turn filed a third-party complaint against Lira Capital as the cashing agent,[3] alleging, among other things, that Lira Capital breached the presentment warranty under the Uniform Commercial Code (UCC), Title 12A of the Revised Statutes of New Jersey, and violated the Fraudulent Transfer Act, N.J.S.A. 22:2-20 to-34. Lira Capital answered, asserting fifteen affirmative defenses and cross-claiming for contribution and indemnification.
Less than three months later, on October 21, 2005, BOA made a Rule 1:4-8 demand that Lira Capital withdraw its answer, claiming it was filed in bad faith,[4] and demanding that Lira Capital pay the check amount to First Atlantic and pay BOA's attorney fees. Less than one month later, First Atlantic and Lira Capital settled the dispute on November 16, 2005, and the underlying action was dismissed on March 3, 2006. By letter of November 17, 2005, Lira Capital advised BOA of the settlement and the putative dismissal of the lawsuit.
Despite the settlement, BOA advised Lira Capital that the matter between them was not fully resolved as the issue of attorney's fees and costs remained outstanding. Thus, BOA sent a second letter on December 19, 2005, again demanding attorney's fees and claiming that Lira Capital's encashment constituted conversion. A third demand letter was sent on February 3, *670 2006, enclosing a summary of BOA's costs and legal fees in defending the underlying action.
When Lira Capital refused to pay BOA's attorney's fees and costs, BOA filed a motion for summary judgment on its third-party complaint and for attorney's fees and costs "pursuant to R[ule] 1:4-8 and N.J.S.A. 2A:15-59.1." Lira Capital cross-moved for dismissal of BOA's third-party complaint. Following a hearing, the court dismissed BOA's third-party complaint with prejudice, finding that because Lira Capital "made good" on the check, BOA suffered no damages under the UCC; that there was no unjust enrichment, and no indemnification or contribution was necessary; and that there was no fraud and therefore no violation of the Fraudulent Transfer Act. The judge also denied BOA's motion for attorney's fees, finding neither a statutory basis for fee shifting, nor fraud to warrant an exception to the American rule embodied in Dorofee v. Planning Bd. of the Tp. of Pennsauken, 187 N.J.Super. 141, 453 A.2d 1341 (App.Div.1982).
On appeal, BOA argues that it is entitled to attorney's fees as other "expenses" resulting from Lira Capital's breach of the UCC's presentment warranty, N.J.S.A. 12A:4-208(b); as "damages" for bad faith conduct under N.J.S.A. 12A:4-103(e); as common law damages where the tort of another forces an innocent third party into litigation; and under the Frivolous Litigation statute and court rule. We reject each of the bases proffered.
As a threshold matter, we note that New Jersey strictly adheres to the "American rule" in regards to attorney's fees. See Van Horn v. City of Trenton, 80 N.J. 528, 538, 404 A.2d 615 (1979) ("the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser" (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975))). Indeed, "sound judicial administration will best be advanced by having each litigant bear his own counsel fees." Gerhardt v. Continental Ins. Co., 48 N.J. 291, 301, 225 A.2d 328 (1966). Consistent with this policy, attorney's fees are not recoverable absent express authorization by statute, court rule or contract. State of New Jersey, D.E.P. v. Ventron Corp., 94 N.J. 473, 505, 468 A.2d 150 (1983). See also R. 4:42-9(a)(7) and (8). And even where expressly provided, "the narrowness of [the exceptions] . . . has always [been] rigorously enforced, lest they grow to consume the general rule itself." Van Horn, supra, 80 N.J. at 538, 404 A.2d 615. Where there is such express authorization and attorney's fees are granted or denied, we will not disturb the lower court's decision unless there is a clear abuse of discretion. Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 25, 860 A.2d 435 (2004); Rendine v. Pantzer, 141 N.J. 292, 317, 661 A.2d 1202 (1995).
It is against this backdrop that we view BOA's claim for attorney's fees under the Check Cashers Regulatory Act of 1993, N.J.S.A. 17:15A-30 to -52; the UCC; the Frivolous Litigation statute, N.J.S.A. 2A:15-59.1, and Rule 1:4-8; and the common law. We conclude that none of them affords a basis for the relief BOA seeks.

(i)
It appears indisputable that, by taking a check payable to a corporate co-payee and cashing it for the individual co-payee, Lira Capital violated the Check Cashers Regulatory Act (Act), which establishes reasonable commercial standards for check cashing licensees, and, as a consequence, Lira Capital further violated the presentment warranties contained in the UCC as a matter of law. See, e.g., Valley National I, supra, 378 N.J.Super. at 425, *671 427, 875 A.2d 1056. The former requires a check cashing company to secure both the name and federal taxpayer identification number of each payee for each check. N.J.S.A. 17:15A-44(2)(b) and (c). The Act further provides that no check casher shall
a. Cash a check which is made payable to a payee which is other than a natural person unless the [check casher] has on file a corporate resolution or other appropriate documentation indicating that the corporation, partnership or other entity has authorized the presentment of a check on its behalf and the federal taxpayer identification number of the corporation, partnership or other entity;
b. Cash a check for anyone other than the payee named on the face of the check
....
[N.J.S.A. 17:15A-47.]
Here, no one contests that Lira Capital cashed a check payable to a corporation without having a corporate resolution or other appropriate documentation indicating that the presentment was authorized, N.J.S.A. 17:15A-47(a), or a federal taxpayer identification number for the corporation, id., or any agent of First Atlantic present when the check was negotiated. Id. Having so violated the Act, Lira Capital became subject to potential revocation or suspension of its license, N.J.S.A. 17:15A-48(a)(1), as well as the imposition of a civil penalty of up to $5,000. N.J.S.A. 17:15A-49(b)(2). See also Valley National (I), supra, 378 N.J.Super. at 425-26, 875 A.2d 1056. However, these are the exclusive remedies available for such violations of the Act. Nowhere does the Act expressly or impliedly provide for an award of attorney's fees to an aggrieved party. And further on this score, since BOA was neither a "payee" nor a "customer", it was not a sufficiently aggrieved party with standing to make a claim under the Act against Lira Capital. See Valley National (I), supra, 378 N.J.Super. at 415, 875 A.2d 1056.
To be sure, BOA may have a right to relief under the UCC's presentment warranties, N.J.S.A. 12A:4-208(a)(1), which were breached by Lira Capital in this case. In this regard, Article 4 of the UCC governs bank deposits and collections and the conduct of both Lira Capital and BOA as parties engaged in the business of banking. See Valley National (I), supra, 378 N.J.Super. at 417-18, 875 A.2d 1056 (Lira Capital as check cashing agent is a "collecting bank" under N.J.S.A. 12A:4-105(e) and BOA is the "payor bank" under N.J.S.A. 12A:4-105(c)). The collecting bank warrants to the payor bank that it is entitled to obtain payment on the check on behalf of the payee and that the check has no unauthorized or missing endorsements. N.J.S.A. 12A:4-208(a)(1). Here, of course, First Atlantic's endorsement was missing and Lira Capital presented the check to BOA without the endorsement of First Atlantic. See U.C.C. Comment 2 on N.J.S.A. 12A:3-417, incorporated by reference in U.C.C. Comment on N.J.S.A. 12A:4-208; see also Valley National (I), supra, 378 N.J.Super. at 427, 875 A.2d 1056 (holding that, as a matter of law, failure to comply with the Check Cashers Regulatory Act is a violation of the presentment warranty).
While BOA may have a right to recover for such a breach under N.J.S.A. 12A:4-208(a)(1), the measure of its damages is limited to the amount paid by the drawee (less the amount the drawee is entitled to received from the drawer) plus expenses and loss of interest resulting from the breach of warranty. N.J.S.A. 12A:4-208(b). See also Valley National *672 (I), supra, 378 N.J.Super. at 427, 875 A.2d 1056. There is no express provision for attorney's fees in N.J.S.A. 12A:4-208(b). And, although UCC Comment 5 to N.J.S.A. 12A:3-417[5] intimates that "attorney's fees . . . could be granted because they fit within the language `expenses ... resulting from the breach[]", N.J.S.A. 12A:3-417, UCC Comment 5, that suggestion certainly does not represent the "practice of th[is] forum[]", 6A Ronald A. Anderson, Uniform Commercial Code (3d ed.1993) at 33, and in fact has been expressly rejected by this court. See Valley National (II), supra, 378 N.J.Super. at 235, 875 A.2d 953.
Our view is shared by the Third Circuit which concluded that under New Jersey law, attorney's fees are not recoverable for breach of UCC warranties. McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 775 (3d Cir.1990). There, the court, in interpreting the UCC's transfer warranties of N.J.S.A. 12A:4-207(c), concluded that the "vague reference" in N.J.S.A. 12A:4-207(c) to "expenses" was an insufficient basis to conclude that the statute expressly authorized an award of attorney's fees contrary to the general rule, McAdam, supra, 896 F.2d at 776, and that UCC Comment 5 was an equally insufficient indicia of the Legislature's intent to award attorney's fees. Noting the virtual identity of the "transfer" and "presentment" warranty provisions of the UCC, we held similarly with respect to Section 4-208 in Valley National (II), affirming the trial court's denial of counsel fees to the payor bank, 378 N.J.Super. at 234, 875 A.2d 953 and its rationale that "if the Legislature had meant to include an award of attorney's fees under the UCC presentment and transfer warranties, it would have done so explicitly." Valley National (I), supra, 378 N.J.Super. at 429, 875 A.2d 1056.
Alternatively, BOA argues that it is entitled to attorney's fees under section 4-103(e) of the UCC, which limits damages to the face value of the item in dispute unless "bad faith" conduct proximately causes "any other expenses", in which case these expenses may be recovered. N.J.S.A. 12A:4-103(e); U.C.C. Comment 6 on N.J.S.A. 12A:4-103. Although "[t]he term `bad faith' is not defined[,] the connotation is the absence of good faith (section 3-103)." U.C.C. Comment 6 on N.J.S.A. 12A:4-103. Thus, BOA argues that under Valley National (I), Lira Capital's breach of the UCC's presentment warranty constitutes a failure to conform to reasonable commercial standards which, in turn, is a failure to exercise good faith, 378 N.J.Super. at 420, 426, 875 A.2d 1056, entitling him to counsel fees as other damages under section 4-103(e).
We find this argument unpersuasive. In the first place, the UCC does not expressly allow for counsel fees and we fail to see why the term "expenses" should be given any broader meaning than the one ascribed for purposes of the UCC's presentment (section 4-208) and transfer (section 4-207) warranty provisions. Moreover, even assuming the lack of good faith equates to "bad faith" for fee shifting purposes, a proposition to which we do not adhere, the "liability of the bank and some loss to the customer or owner must [still] be established." UCC Comment 6 on N.J.S.A. 12A:4-103. In this regard, the "proximateness" of damages sustained is tested by the rules applied in "comparable cases". Ibid. However, BOA points to no case authorizing an award of attorney's fees under these or similar circumstances. *673 On the contrary, as already noted, our courts have repeatedly refused to award attorney's fees in the absence of a specific rule or statute expressly so providing. Pressler, Current N.J. Court Rules, comment 2.13 on R. 4:42-9 (2007). Where courts have allowed recovery of attorney's fees in cases governed by Rule 4:42-9(a)(8), they have based that allowance on specific language in the statute providing for such. Powers v. Union City Bd. of Educ., 124 N.J.Super. 590, 597-98, 308 A.2d 71 (Law Div.1973), aff'd, 127 N.J.Super. 294, 317 A.2d 373 (App.Div.), certif. denied, 65 N.J. 575, 325 A.2d 709 (1974). See, e.g., Kvaerner Process v. Barham-McBride, 368 N.J.Super. 190, 845 A.2d 692 (App.Div.2004) (Construction Lien Law, N.J.S.A. 2A:44A-1 to -38); Glen v. June, 344 N.J.Super. 371, 381-82, 782 A.2d 430 (App.Div.2001) (Condominium Act, N.J.S.A. 46:8B-21); Buccinna v. Micheletti, 311 N.J.Super. 557, 562-63, 710 A.2d 1019 (App.Div.1998) (Conscientious Employee Protection Act, N.J.S.A. 34:19-5 and -6). Here, the mere reference to "expenses" in N.J.S.A. 12A:4-103(e) hardly qualifies as an exception to our strict "American" rule.
Most significant, however, is the fact that Lira Capital's alleged "bad faith" has never been demonstrated nor adjudicated as required by N.J.S.A. 12A:4-103. First Atlantic's underlying action was settled and subsequently dismissed. BOA's third-party complaint was also dismissed on Lira Capital's motion for summary judgment, a decision which operates as an adjudication on the merits, Rule 4:37-2(a), and from which BOA has not appealed. Indeed, in dismissing BOA's third-party complaint, the motion judge expressly found no evidence of fraud and no liability. Thus, having failed to establish any bad faith on the part of Lira Capital, BOA is not entitled to attorney's fees even under its strained interpretation of section 4-103(e).

(ii)
BOA next argues that because it was forced to defend an action by a third party on account of Lira Capital's tortious conversion of funds, it is entitled to attorney's fees as a "traditional element of damages." We disagree. One of the few exceptions to the American rule is that if "the commission of a tort proximately causes litigation with parties other than the tortfeasor," "the plaintiff is entitled to recover damages measured by the expense of that litigation with third parties." Jugan v. Friedman, 275 N.J.Super. 556, 573, 646 A.2d 1112 (App.Div.), certif. denied, 138 N.J. 271, 649 A.2d 1291 (1994) (citing several New Jersey decisions wherein attorney's fees were awarded when fraudulent conduct constituted the underlying offense); Dorofee v. Planning Bd. of the Tp. of Pennsauken, supra, 187 N.J.Super. at 144, 453 A.2d 1341 ("although attorneys fees are not ordinarily included as damages in a fraud action, one who is forced into litigation with a third party as a result of another's fraud may recover from the tortfeasor the expenses of that litigation, including counsel fees, as damages flowing from the tort."). See also, Pressler, Current New Jersey Court Rules, comment 2.9 on R. 4:42-9 (2007) (Rule 4:42-9 does not preclude an award of attorney's fees as a traditional element of damages). In this case, however, although BOA alleges tortious conversion, such a claim has never been proven or adjudicated.
Rather, BOA's claim against Lira Capital sounds more properly in breach of the presentment warranty of N.J.S.A. 12A:4-208, for which the UCC provides an adequate remedy. Given the statute's comprehensiveness, "[c]ourts should be hesitant to improvise new remedies outside the already intricate scheme of Articles 3 and 4." Girard Bank v. Mount Holly State *674 Bank, 474 F.Supp. 1225, 1239 (D.N.J. 1979). Indeed, "[o]nly in very rare instances should a court upset the [UCC's] legislative scheme of loss allocation and permit a common law cause of action." Bank Polska Kasa Opieki v. Pamrapo Savings Bank, 909 F.Supp. 948, 956 (D.N.J.1995). Simply put, we do not view this matter as one of those "very rare instances", particularly where the allowance of attorney's fees for Lira Capital's breach of warranty would circumvent the entrenched policy of this State against fee shifting. See Valley National (I), supra, 378 N.J.Super. at 428-29, 875 A.2d 1056.

(iii)
Lastly, BOA claims entitlement to attorney's fees under the Frivolous Litigation statute, N.J.S.A. 2A:59-1, and Rule 1:4-8. Although the motion judge for some reason did not decide this issue, in the exercise of our original jurisdiction, Rule 2:10-5, we conclude that neither source affords BOA the relief it seeks.
To successfully invoke N.J.S.A. 2A:15-59.1, a party must "prevail". Fagas v. Scott, 251 N.J.Super. 169, 192, 597 A.2d 571 (Law Div.1991). Even if the matter settles, one party may be deemed to have "prevailed" for the purposes of this statute. Ibid. Similarly, if a complaint is dismissed because it lacks merit, the defendant is deemed to have prevailed and may recover under the statute. Ibelli v. Maloof, 257 N.J.Super. 324, 608 A.2d 440 (Ch.Div.1992); Chernin v. Mardan Corp., 244 N.J.Super. 379, 582 A.2d 847 (Ch.Div.1990). Here, however, BOA's third-party complaint was dismissed with prejudice as having no merit. Under the circumstances, BOA is not a "prevailing party" for purposes of recovering attorney's fees under the Frivolous Litigation statute.
Nor may Lira Capital's answer and defenses be deemed "frivolous" for purposes of Rule 1:4-8. An assertion is deemed frivolous when "no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable." Fagas v. Scott, supra, 251 N.J.Super. at 190, 597 A.2d 571 (internal quotations omitted); see also Evans v. Prudential Property and Casualty Ins. Co., 233 N.J.Super. 652, 559 A.2d 888 (Law Div.1989). "`That some of the allegations made at the outset of litigation later proved to be unfounded does not render frivolous a complaint that also contains some non-frivolous claims.'" Iannone v. McHale, 245 N.J.Super. 17, 32, 583 A.2d 770 (1990) (quoting Romero v. City of Pomona, 883 F.2d 1418, 1429 (9th Cir. 1989)). Where a party has reasonable and good faith belief in the merit of the cause, attorney's fees will not be awarded. DeBrango v. Summit Bancorp., 328 N.J.Super. 219, 227, 745 A.2d 561 (App.Div.2000); K.D. v. Bozarth, 313 N.J.Super. 561, 574-75, 713 A.2d 546 (App.Div.), certif. denied, 156 N.J. 425, 719 A.2d 1023 (1998); see also Iannone v. McHale, supra, 245 N.J.Super. at 29, 583 A.2d 770 (employing a test of objective reasonableness). The nature of conduct warranting sanction under Rule 1:4-8 has been strictly construed, Wyche v. Unsatisfied Claim & Judgment Fund, 383 N.J.Super. 554, 560, 892 A.2d 761 (App.Div.2006) (citing K.D. v. Bozarth, supra, 313 N.J.Super. at 574-75, 713 A.2d 546), and "the term `frivolous' should be given a restrictive interpretation" to avoid limiting access to the court system. McKeown Brand v. Trump Castle Hotel and Casino, 132 N.J. 546, 561-62, 626 A.2d 425 (1993).
Here, Lira Capital's pleading clearly reflects an objectively reasonable belief that the actions of a third party, defendant Perez, were a direct cause of BOA's putative loss, and thus it was entirely proper for Lira Capital to seek to preserve its *675 defenses and assert its crossclaims for contribution and indemnification. In fact, Lira Capital's crossclaims and affirmative defenses are explicitly authorized. Metuchen Savings Bank v. Pierini, 377 N.J.Super. 154, 163, 871 A.2d 759 (App.Div.2005) (the UCC does not preclude plaintiff's recovery from the payee who tortiously converted the funds as well as the bank that honored the improperly-endorsed check); County Concrete Corp. v. Smith, 317 N.J.Super. 50, 51, 721 A.2d 34 (App.Div. 1998) (same). Moreover, its answer properly held BOA to its burden of proving the third-party claim, S & R Assocs. v. Lynn Realty Corp., 338 N.J.Super. 350, 364, 769 A.2d 413 (App.Div.2001), lest BOA's claims be deemed admitted under Rule 4:5-5.
Furthermore, paragraph b of Rule 1:4-8 allows avoidance of the attorney-fee sanction where, after given notice and demand pursuant to Rule 1:5-2, the adverse party withdraws the offending paper within 28 days of service. Pressler, Current N.J. Court Rules, Comment to R. 1:4-8(b) (2007). Here, although Lira Capital did not technically withdraw its answer within the 28-day period, it settled the underlying action instituted by First Atlantic within 26 days of service of BOA's written demand and therefore effectively qualified for the rule's protection. For all these reasons then, BOA was not entitled to attorney's fees under either the Frivolous Litigation statute or rule.
Affirmed.
NOTES
[1] Lira Capital is a franchisee doing business under the name of United Check Cashing. United Check Cashing is also the name of the franchisor.
[2] First Atlantic also sought from Perez the sum of $21,244.77, representing the loan balance plus costs and fees as per the security agreement. First Atlantic never recovered from Perez, as Perez subsequently filed for bankruptcy.
[3] BOA also impleaded JP Morgan Chase, where Lira Capital maintained an account. JP Morgan filed an answer, and BOA and JP Morgan subsequently executed a stipulation of dismissal without prejudice.
[4] BOA's claim of bad faith was based, in part, on the holding in Valley National Bank v. P.A.Y. Check Cashing, 378 N.J.Super. 406, 875 A.2d 1056 (Law Div.2004) (Valley National I), aff'd, 378 N.J.Super. 234, 875 A.2d 953 (App. Div.2005) (Valley National II), wherein we held that P.A.Y. Check Cashing d/b/a United Check Cashing, failed to act in accordance with reasonable commercial standards or to exercise good faith in negotiating a check jointly payable to a corporation and an individual without the signature or presence of the corporate payee. In the present case, however, the motion court determined that Lira Capital, although also doing business under the name "United Check Cashing", was not the same party as in Valley National.
[5] This comment also applies to N.J.S.A. 12A:4-208. See UCC Comment 1 to Section 4-208.