**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2049-21

EMPRESS HOUSE
CONDOMINIUM ASSOCIATION,

    Plaintiff-Respondent,

v.

TURN BRIGHT AT
PATERSON, LLC,

    Defendant-Appellant.

_____

Argued October 10, 2023 – Decided January 19, 2024

Before Judges Gilson and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3604-18.

Michael James Confusione argued the cause for appellant (Hegge & Confusione, LLC, attorneys; Michael James Confusione, of counsel and on the briefs).

Brian D. Schwartz argued the cause for respondent (Schwartz, Hanna, Olsen & Taus, PC, attorneys; Brian D. Schwartz, on the brief).

PER CURIAM

Defendant appeals from two orders following a bench trial and argues it did not have an obligation to continue to pay condominium association dues because plaintiff breached a 2016 settlement agreement by not making repairs to defendant's units. Defendant also challenges the attorneys' fee award. We conclude the settlement agreement between the parties did not give defendant the right to withhold payment of condominium association dues and affirm the trial court's order. We also affirm the award of attorney's fees.

I.

Empress House is overseen by the Empress House Condominium Association (the Association), a non-profit organization. The complex consists of 150 residential units and two commercial units. According to the Association's Declaration of Covenants and Restrictions and bylaws, the size of the unit, the percentage of interest in the common elements of Empress House, and the amount of Association dues all correlate – the larger the unit the greater the association fee. These fees are used by the Association as the annual operating budget for Empress House, including payment of utilities, maintenance and repair of common areas, and staff payroll.

A-2049-21

In March 2013, Turn Bright at Paterson LLC (Turn Bright) purchased the two commercial units for $145,000 and immediately rented out both units to a childcare center. By the time of trial, several childcare centers had occupied the spaces, although they all had difficulty meeting the rental payments.

The units had historically experienced water issues, including pipe condensation and broken or leaky pipes. In the summertime, the pipes above the commercial units sweat, condensate, and water drips to the lowest level of the building, where the two units were located, causing ceiling leaks. Defendant was aware of heating and plumbing issues in the commercial units prior to its purchase. Despite renovations in March of 2013, water damage persisted in the form of leaks and floods. Flooding also occurred due to an exterior sewer backup. Turn Bright's owner believed the Association was not upholding its responsibilities due to the worsening condition of the premises. As a result, Turn Bright stopped paying the monthly Association dues.

In 2014, Turn Bright sued the Association, alleging it had breached its duty to maintain and repair the premises. The 2014 litigation was eventually resolved in a March 18, 2016 Stipulation of Settlement (the 2016 Settlement Agreement), which was intended to serve as a "clean-slate" between the parties. Pursuant to the agreement, Turn Bright agreed to pay the Association five

months' worth of condominium association dues. This effectively resulted in $97,000 in unpaid dues being forgiven by the Association.

Turn Bright also agreed to pay all future monthly Association dues starting April 1, 2016. These payments were to be made through an "auto-pay" service. The Association agreed to earmark $1,000 per month from the Association dues paid by Turn Bright to make repairs to the commercial units. The money could be used to repair or prevent future damage to any type of piping in the ceiling of the units. However, the reserved money was not to be used for repairs that would ordinarily be considered the burden of the owner. There was no agreement between the parties as to which party would oversee or pay for specific repairs.

The 2016 Settlement Agreement was in force for a 48-month period, from the effective date of November 1, 2015, to October 31, 2019. In the event either party defaulted on any of the material terms of the agreement, the other party was entitled to refile the lawsuit claiming funds that may still be due.

The leaks continued, and in August of 2016 Turn Bright stopped making its required payments of Association dues. Turn Bright made a few sporadic payments in September 2017, November 2017, and June 2018 but made no payments in the intervening months and the following years. As of January 4,

2021, Turn Bright owed the Association a total of $163,425.27 in unpaid Association dues.

In January 2017, the Association spent $11,008.13 to make a few interim repairs but notified Turn Bright it was awaiting payment of its 2017 dues to make further repairs. Turn Bright did not send the funds, and claimed the proposed work was not the subject of the 2016 Settlement Agreement. The Association continued to make sporadic repairs, including an evaluation of a blockage and cleaning of the commercial units' sewer line.

On November 2, 2018, the Association filed a complaint against Turn Bright, seeking payment of the unpaid Association dues. A five-day bench trial was conducted. A representative of the Association testified it could not make the capital improvements necessary because Turn Bright did not provide adequate funds. In response, the owner of Turn Bright testified, given the continuation of the water damage, it "did not have any other legal remedies but to stop payment." Further, he explained that while Turn Bright received rental payments from March 2016 to April 2019 for one of the units, it was unable to rent the other unit due to water damage.

The trial court entered judgment in favor of the Association. It found "[t]here [was] no question that there ha[d] been an ongoing problem of water

infiltration" in the two commercial units. It also found the Association's efforts to rectify the sewer backups, overflows from heavy rainstorms, and clogged drains were "reasonable." However, the Association's efforts to respond to and repair the condensation-related water issues were "woefully deficient." The court noted the 2016 Settlement Agreement was not specific as to the agreed to repairs, when they needed to be completed, or which party was responsible for overseeing the repairs. Nevertheless, the court explained that water infiltration caused by condensation was clearly an issue and the Association's efforts to repair the issue had been "unsatisfactory."

Although the court was critical of the way the Association ran its business, it determined Turn Bright took advantage of the Association to try "to evade its obligations to pay common area maintenance charges." It found the Association was entitled to recover the unpaid association charges and rejected Turn Bright's argument that plaintiff was not entitled to association charges pursuant to the theory of unclean hands. According to the court, "[a] unit owner's obligations to pay common expenses is unconditional."

The court also rejected Turn Bright's contention its damages should be offset by $168,884.35 for lost rental income. The court found insufficient evidence to demonstrate the condition of the premises impacted the ability to

rent the space. Instead, it found Turn Bright made no effort to mitigate its damages, by either fixing the leaks itself, or attempting to collect rent from or evicting its non-paying tenants. The court characterized this failure to mitigate as "a calculated effort to obtain a windfall similar to what [Turn Bright] did in the 2014 suit," rejected Turn Bright's counterclaim for offset damages, and entered a judgment in the amount of $159,151.27 in favor of the Association.

According to the Association's bylaws, the Board of the Association had the right to charge interest on association fees not timely paid. The Board could also charge a sum for reasonable counsel fees. Therefore, the court allowed the Association to submit an affidavit detailing the attorneys' fees it had incurred.

The court determined there was no legal justification for Turn Bright to have stopped paying its Association dues and plaintiff was entitled to an award of attorneys' fees pursuant to its master deed and bylaws. The court noted Turn Bright did not dispute the reasonableness of the attorneys' rate, but rather the award of fees. Plaintiff's attorneys billed a total of $31,350. After it considered the fees "it deem[ed] necessary for the prosecution of [plaintiff's] case in chief," the court awarded plaintiff $20,728 in reasonable fees.

Defendant appeals from both the February 28, 2021 order finding Turn Bright liable in the amount of $159,151.27 for unpaid dues and the March 10,

2021 order finding Turn Bright liable for $20,728 in attorneys' fees. It argues the trial court erred by awarding plaintiff all the association fees and charges despite finding plaintiff breached its own obligations pursuant to the parties' 2016 Settlement Agreement and failed to apply the governing agreement in its calculation of damages owed to the Association. It also argues the trial court erred in awarding $20,325 in attorney's fees to plaintiff. We disagree and affirm both of the trial court's orders.

## II.

Appellate courts review a "trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial," pursuant to a deferential standard. Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)). We accept the trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." D'Agostino, 216 N.J. at 182 (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). A trial court's legal conclusions and "the legal consequences that flow from established facts" are reviewed de novo. Motorworld, Inc. v. Benkendorf, 228

8

N.J. 311, 329 (2017) (citing D'Agostino, 216 N.J. at 182; Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A. The Association Dues.

An agreement to settle a lawsuit is a contract, "governed by the general principles of contract law." Savage v. Township of Neptune, 472 N.J. Super. 291, 305 (App. Div. 2022) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016)). "[O]ur courts have refused to vacate final settlements absent compelling circumstances." Ibid. (alteration in original) (quoting Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)).

Both parties signed the 2016 "Stipulation of Settlement" where the Association agreed to forgive approximately $97,000 in outstanding dues. The 2016 Settlement Agreement was intended by the parties to represent a "clean slate."

Pursuant to general contract principles, if one party commits a "breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement." Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017) (quoting Nolan, 120 N.J. at 472). "[A] breach is material if it 'goes to the essence of the contract.'" Ibid. (quoting Ross Sys. v. Linden Dari-Delite, Inc., 35 N.J. 329, 341 (1961)).

A-2049-21

Turn Bright argues the Association's failure to adequately repair the condensation leak issue constituted a material breach, which entitled Turn Bright to withhold payment of Association dues. The trial court found the Association's failure to repair the condensation leak issue in a timely manner constituted a "breach" of the agreement. However, it also held that even if the Association breached the 2016 Settlement Agreement, the agreement did not allow Turn Bright to stop payment of Association dues. We agree.

Turn Bright cannot point to any language in the agreement that provided that remedy. Turn Bright could have sued the Association for breach of the agreement, but it did not. Instead, it stopped making payments of Association dues in August 2016, soon after the agreement was reached. In the agreement the Association agreed to "reserve" $1,000 per month from Turn Bright's monthly dues "for the purpose of making repairs." The Association eventually completed the repairs to resolve the condensation leak issue in May 2020, despite Turn Bright's failure to pay Association dues.

Even if the Association's failure to fix the condensation leak issue by August 2016 amounted to a "material breach," which the trial court did not find, Turn Bright would not have been permitted to withhold Association dues because the 2016 Settlement Agreement did not expressly allow that remedy.

10

Plaintiff has not pointed to any language in the agreement that would absolve it of its obligation to make those payments pursuant to the New Jersey Condominium Act (the Condominium Act). N.J.S.A. 46:8B-1 to -38. In the absence of such a contractual provision, we agree with the trial court that the 2016 Settlement Agreement did not afford Turn Bright the right to stop paying Association dues for breach of the agreement. See E. Brunswick Sewerage Auth. v. E. Mill Assocs., Inc., 365 N.J. Super. 120, 125, 838 A.2d 494, 497 (App. Div. 2004) (citing Washington Const. Co. v. Spinella, 8 N.J. 212, 217 (1951) (explaining "the court will not make a different or a better contract than the parties themselves have seen fit to enter into")).

Generally, "[a] unit owner's obligation to pay common expenses is unconditional." Glen v. June 344 N.J. Super. 371, 377 (App. Div. 2001) (citing N.J.S.A. 46:8B-17). However, a unit owner may be entitled to damages, as "measured by the reasonable value of the loss of use . . . for the period he was deprived thereof," to be "set off" against his outstanding fees. Id. at 380. Turn Bright argues Glen is inapposite because that case involved only the Condominium Act, whereas Turn Bright's obligation to continue paying association dues arose pursuant to the 2016 Settlement Agreement. We disagree. Turn Bright's obligation to pay Association fees stems from the master

deed and bylaws, not the 2016 Settlement Agreement. Although the agreement forgave a portion of past dues, it did not address the payment of future fees except to acknowledge that Turn Bright would resume paying dues upon the execution of the agreement. That obligation exists by virtue of its ownership of the condominium units. Plaintiff's alleged breach of a material term of an agreement does not relieve defendant of his unconditional obligation to pay future dues.

Turn Bright had an obligation to continue paying its Association dues, and breached its obligation when it stopped making payments in August 2016. The Association's failure to rectify the leakage problems, at least by the time Turn Bright stopped paying its dues, was not a breach of the express terms of the Settlement Agreement, and, even if it was, Turn Bright would not have been entitled to withhold payment of Association dues.

B. The Counterclaim for an offset for damages.

We also find adequate, credible evidence in the record to support the trial court's determination that Turn Bright did not take reasonable steps to mitigate its damages by attempting to evict or collect rent from its tenants. We, therefore, affirm the court's denial of an offset on defendant's counterclaim. In Glen, we explained the appropriate remedy available to a unit owner who has suffered

12

damages as a result of a condominium association's breach.  344 N.J. Super. at 380-81.

Turn Bright asserted it was entitled to offset $168,884.35 from the damage award due to lost rental income resulting from the Association's breach of its obligations.  The trial court found defendant did not meet its burden in proving it took reasonable steps to mitigate damages.  There is sufficient credible evidence in the record to support the trial court's finding, including the lack of any effort by Turn Bright to evict its non-paying tenants or pay Association dues despite collecting rent on one of the two units.

C.  The Attorneys' Fees.

Appellate courts review an award of attorney's fees for abuse of discretion. Noren v. Heartland Payment Sys., Inc., 448 N.J. Super. 486, 497 (App. Div. 2017).  Determinations regarding attorney's fees will be disturbed "only on the rarest of occasions, and then only because of a clear abuse of discretion."  Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)).

New Jersey follows the American Rule: a prevailing party is entitled to attorney's fees only if it is authorized by the parties' contract, court rule, or statute.  Litton Indus., 200 N.J. at 385 (quoting Packard-Bamberger, 167 N.J. at

444); id. at 404 (Rivera-Soto, J., concurring). The Condominium Act authorizes the collection of "reasonable attorney's fees imposed or incurred in the collection of [an] unpaid assessment." N.J.S.A. 46:8B-21(a). Additionally, section 11 of the Association's bylaws authorizes the collection of "reasonable counsel fees" incurred in the collection of unpaid Association dues.

The court determined there was no legal justification for Turn Bright to have stopped paying its Association dues and plaintiff was entitled to an award of attorneys' fees pursuant to its master deed and the bylaws. The court noted Turn Bright did not dispute the reasonableness of the rate or amount of plaintiff's attorneys' fees. The trial court's award of attorneys' fees was authorized by statute and the Association's bylaws. See Litton Indus., 200 N.J. at 385. Moreover, the court engaged in the appropriate analysis of the reasonableness of the fees. We find no abuse of discretion and affirm the award.

To the extent we have not addressed defendant's remaining arguments, we find they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-2049-21