**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4544-18

SYLVAN DENTAL, P.A., and
DONG HYUN LEE,

     Plaintiffs-Appellants,

v.

CATHERINE CHEN,

     Defendant-Respondent.

_____

Submitted September 14, 2020 – Decided August 19, 2021

Before Judges Sabatino, Currier, and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-8325-16.

Michael S. Kimm, attorney for appellant.

McCusker, Anselmi, Rosen & Carvelli, PC, attorneys for respondent (Bruce S. Rosen and James Harry Oliverio, on the brief).

PER CURIAM

In this libel/defamation action, Dr. Dong Hyun Lee and his practice, Sylvan Dental, PA (collectively, plaintiffs), appeal from several Law Division orders, culminating in a June 11, 2019 order of final judgment for nominal damages in the amount of $500 entered in favor of them against defendant Dr. Catherine Chen. We affirm.

I.

We glean these facts from the record. Chen and Lee are both dentists. Chen operated her dental practice in office space she rented from Lee in a commercial building located on Sylvan Avenue in Englewood Cliffs. Lee operated his practice out of a different suite in the same building. Under their ten-year lease agreement executed on December 8, 2008, Chen could "cancel th[e] lease by giving [sixty] day[s] advance notice in writing" to Lee. On April 18, 2013, Chen delivered a written "Notice of Cancellation of Lease" to Lee, providing the requisite sixty days' notice.

Thereafter, Chen negotiated the sale of her practice to Dr. Jorge Delvalle, another dentist, and executed a purchase proposal with Delvalle dated April 29, 2013, with a closing date of May 24, 2013. The sale was purportedly contingent on Delvalle being able to lease the same premises from Lee. However, the negotiations to lease the premises to Delvalle were upended when Lee

2

demanded, among other things, an additional payment of $80,000 to rent the space. As a result, the sale of Chen's dental practice to Delvalle was never consummated. Unable to sell her practice, Chen vacated the premises by the end of June 2013, terminating her lease with Lee in accordance with her prior notice of cancellation.

Chen continued to practice dentistry at a new location in New Jersey until she was eventually able to sell her practice in 2014. In 2015, she moved to the State of Washington. In an apparent attempt to retaliate against Lee for his perceived role in thwarting the sale of her practice to Delvalle and failing to reinstate her lease once the sale fell through, in 2016, Chen posted defamatory and inflammatory statements about Lee and his practice on two different websites. The statements, which were admittedly false,[1] accused Lee of insurance fraud and disparaged his dental treatment and practice.

The first statement dated January 27, 2016, was posted by a user later identified as Chen, writing under the pseudonym "QT in Palisades Park." The post described Lee's dental practice as "the worst dental experience . . . ever encountered," accused Lee of "insurance fraud" by billing for treatment that was

---

[1] We quote from the statements in this opinion by necessity, with a caveat to readers that defendant admits they are false.

never performed, and warned readers to avoid Lee's practice.  The post appeared on www.healthgrades.com.[2]

On September 28, 2016, a second post appeared on www.yelp.com[3] by a user later identified as Chen, writing under the pseudonym "QT C."  The post gave a "[zero]" rating to Lee's practice, described the dental treatment as a "painful" and "horrific experience," reported plaintiffs' "bad reputation" "among Korean communities," and again accused Lee of "insurance fraud" by billing for treatment that was never performed.  The post also relayed a second-hand report that Lee "was fined $80,000 by [an] insurance company," and warned readers to avoid Lee's practice and not be "fool[ed]" by the "fancy waiting room."

In response, on November 29, 2016, plaintiffs filed an eight-count complaint against Chen, alleging libel per se (count one), libel (count two),

---

[2]  According to its website, Healthgrades "is the leading online resource for patients to find and connect with the right doctor or hospital."  The site reportedly helps "about a million people a day find and connect with healthcare providers" and "search for top-rated doctors or hospitals."  Additionally, the site provides reviews from "patients" and information about "specific condition[s]" and "procedure[s]."  Healthgrades, Healthgrades Frequently Asked Questions, https://www.healthgrades.com/content/faqs (last visited August 5, 2021).

[3]  Yelp provides an online directory that allows registered users to post reviews and rank businesses on a scale of one to five stars.  Based on these user rankings, Yelp then assigns businesses an overall "star" rating.  Businesses cannot opt out of being listed on Yelp.  Levitt v. Yelp! Inc., 765 F.3d 1123, 1126 (9th Cir. 2014).

A-4544-18

slander (count three), trade libel (count four), tortious interference (count five, erroneously denoted as count four), interference with prospective relations (count six, erroneously denoted as count five), irreparable harm warranting an injunction (count seven, erroneously denoted as count six), and fraudulent inducement (count eight, erroneously denoted as count seven).

In the complaint, plaintiffs alleged the content in both posts was conveyed to Lee by "numerous patients" and confirmed by plaintiffs' subsequent investigation. Plaintiffs argued Chen's "false assertions were deliberately intended to cause as much retaliation and negative response against the plaintiffs as the Internet would spawn, and [Chen] sought actively to promote the false accusations of professional misconduct and even criminality with her . . . 'insurance fraud' assertion." Further, Chen lacked a "factual basis" for her claims and was "not even a patient of . . . plaintiffs' practice." As relief, plaintiffs sought damages, both compensatory and punitive, as well as injunctive relief, including the removal of the defamatory postings and a retraction notice. Plaintiffs also demanded a jury trial, pursuant to Rule 4:35-1.

By December 2016, the posts had been removed. In March 2017, Chen filed an answer admitting to posting the negative reviews but denying Lee's claims. Chen's answer contained seven counterclaims primarily related to the

lease agreement with Lee and the failed contract with Delvalle. Specifically, Chen alleged interference with contract and prospective economic advantage (count one); breach of the lease agreement (counts two and three); unjust enrichment (count four); breach of the implied covenant of good faith and fair dealing (count five); consumer and common law fraud (count six); and libel (count seven). Chen sought damages, both compensatory and treble, repayment of her security deposit, and dismissal of plaintiffs' claims.

During discovery, Chen served Lee with interrogatories and document requests. In the interrogatories, Chen requested Lee to "[i]dentify every patient" by "name, together with address, email address and telephone number who told [Lee] about 'negative Internet reviews' on 'multiple sources' as alleged in . . . the [c]omplaint." Lee objected to the request "as unreasonable," stating "there [were] too many names to be able to recall with precision of the kind sought by this . . . request."

Lee further explained:

> Plaintiffs' patients and non-patient acquaintances routinely and generally stated that they had seen the "derogatory posting on Yelp" and "on [Healthgrades]" and that they were "shocked to see such nasty review, by a patient." Because the number of such reaction has been in the dozens and dozens and probably thousands of potential patients decided to avoid [plaintiffs] because of the false, evil attacks, plaintiffs are unable

6

to provide specific names . . . in response to this unreasonable request.

Regarding reputational and financial damages, Chen requested Lee to "[d]escribe with particularity all reputational and financial damages" allegedly caused by the "Health Grades" and "Yelp" reviews "as set forth in the [c]omplaint," and "[e]xplain exactly all calculations as to the alleged damages caused by each individual publication." Lee responded:

> Yelp provides access to [eighty-four] million unique monthly users as of 2015, according to https://www.yelp.com/factsheet. In the northeastern United States, where plaintiffs are based, Yelp provides access to New York, New Jersey, Connecticut, Pennsylvania and other areas from which plaintiffs' patients are solicited and marketed.
>
> Health Grades are less but equally potent for health[-]related inquiries among consumers and non-consumers alike.
>
> As a result plaintiffs are entitled to non-liquidated damages of at least $1 per user/access to the defamatory postings.

Lee further explained that he suffered "[i]rreparable harm . . . because of [Chen's] ongoing defamatory attack waged in the social media as shown in the two postings," entitling him to an injunction.

On August 3, 2018, the trial judge granted Chen's motion to compel Lee to provide more specific responses to certain interrogatories and to provide

A-4544-18

requested documents. Specifically, the judge stated that "plaintiffs must answer how [Chen's] actions have affected plaintiffs' reputation" or "plaintiffs will be limited to those responses in damages proofs." The judge stated further that plaintiffs would be "limited at trial by the discovery they have provided."

Thereafter, Lee provided the following additional information regarding reputational damage:

> Many patients have since stated that they had seen the "[Y]elp" review in particular, concerning Dr. Lee and that they had recommended others to be treated by Dr. Lee but those others had seen the "[Y]elp" review and had been turned off due to the negative review posted by someone with a "very vivid description" of pain and suffering at the hands of Dr. Lee.

On September 11, 2018, Lee was deposed and testified that he could not "recall the names" of patients who discontinued treating with him as a result of the reviews. Additionally, Lee could not "recall the number" or names of persons who told him they did not want to become his patients because of the reviews. According to Lee, there were more people who never communicated with him in person about the reviews than those who did. Lee "believe[d]" that his "patients decreased [by] about [twenty] percent" for about "[t]hree or four months" as a result of the reviews. When specifically asked what people told

8

him about the negative reviews, Lee responded that "generally . . . they thought it was false."

On November 2, 2018, Chen moved for summary judgment dismissal of all the counts in the complaint with the exception of the libel or defamation count. As to the libel count, Chen sought partial summary judgment limiting Lee's remedy to nominal damages based on Lee's failure to produce any evidence of actual damages. Lee opposed the motion and cross-moved for summary judgment on Chen's counterclaims.

In support of her summary judgment motion, Chen submitted her own certification, the certification of her attorney, the purchase proposal for Delvalle's purchase of Chen's practice, an affidavit by Delvalle's attorney, a copy of the original ten-year lease agreement, a letter from Chen notifying Lee of her lease cancellation, copies of the offending reviews, Lee's interrogatory responses, excerpts from Lee's deposition, along with other ancillary documents.

On December 21, 2018, following oral argument, the judge granted summary judgment to Chen on all but the libel and injunction counts (counts two and seven). The judge noted that the slander claim (count three) and the fraudulent inducement claim (count eight) were "[v]oluntarily withdrawn or conceded" by plaintiffs. Meanwhile, the libel per se claim (count one), was

dismissed as duplicative of the libel count. As to the trade libel claim (count four) and the tortious interference claims (counts five and six), the judge determined the counts could not survive because there was no evidence of damages.[4]

In specifically addressing damages, the judge stated that instead of "produc[ing] books and records that showed" the claimed "[twenty percent] decline" in profits, Lee had "failed to provide any discovery that would support damages," and was therefore barred from "present[ing] proof of actual damages." The judge determined that Lee would not be permitted to testify that "he lost [twenty percent] of his business . . . because [he] didn't produce any discovery that would show what that was or wasn't." In so doing, Lee "deprive[d Chen] of evidence that would allow [her] to impeach that statement." Further, Lee

> would be calling on the jury to speculate as to what that could possibly translate to in terms of a dollar award because there [was] no evidence . . . provided as to whether that [twenty percent] is [twenty percent] of ten million, a hundred thousand, or anything in between.

---

[4] The judge also determined "that the case law makes clear that the tortious interference counts cannot survive because they're duplicative of the libel count."

According to the judge, because of the absence of any proof of damages, the surviving libel count would proceed "with no proofs permitted on actual damages" or "pecuniary harm" and Lee would be limited at trial to recovering "presumed nominal damages only."

Turning to Lee's cross-motion for summary judgment dismissal of the counterclaims, the judge granted summary judgment to Lee on count two (one of the two breach of lease counts) because "defendant had terminated the [l]ease." The judge denied Lee's motion as to counts one, three, four and five "without [p]rejudice." Those counts involved allegations pertaining to Lee's role in maliciously thwarting the sale of Chen's practice to Delvalle and retaining Chen's security deposit totaling $3000 following the termination of the lease. While acknowledging that "there may be a proof problem" and a "fatal" deficiency of proof as "to the damage component," the judge determined there were material facts in dispute and "it would be premature to dismiss [those counts] without the opportunity to see what develops" at trial. Counts six and seven were voluntarily withdrawn by Chen. The judge entered orders memorializing her decisions.

On January 9, 2019, Lee moved for reconsideration of the December 21, 2018 order denying in part his cross-motion for summary judgment. In support,

11

Lee relied on Chen's deposition testimony taken immediately after the December 21, 2018 summary judgment hearing in which Chen acknowledged selling her practice several months after terminating her lease with Lee for $12,000 more than the purchase price she had negotiated with Delvalle.

On January 25, 2019, the judge denied Lee's motion, concluding that "[p]laintiffs have not satisfied any of the criteria for reconsideration under Rule 4:49-2 and 4:42-2, or applicable case law." The judge explained that the motion was "not supported by a brief, did not attach the [o]rder for which they sought reconsideration, and made no reference to any [c]ourt [r]ules or legal authority for the motion." See Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) ("Motions for reconsideration are granted only under very narrow circumstances. . . .").

According to the judge, instead, Lee merely sought to "supplement the previously filed papers with the transcript of [Chen's] deposition taken after the motion was decided" notwithstanding the fact that "the [c]ourt had issued an order" directing Chen's deposition months before. Thus, the judge determined that Lee's purported motion for reconsideration was actually a "renew[ed] . . . summary judgment motion [filed] after the time permitted by the Court Rules."

The judge continued that

> [i]n addition to being out-of-time, plaintiffs' summary judgment motion[,] mislabeled as a motion for reconsideration[,] does not comply in any manner with Rule 4:46. There is no statement of undisputed material facts, but rather a combination of deposition references and arguments packaged in counsel's certification, couple[d] with resubmitting the old motion papers.

On April 15, 2019, the parties appeared for trial. Prior to jury selection, the judge heard in limine motions, after which the judge reiterated that "the only damages . . . plaintiff [would] be permitted to recover [were] nominal damages" because Lee was "precluded from offering proofs on compensatory damages for the reasons" articulated in the December 21, 2018 ruling.[5] The judge then gave the parties an opportunity to engage in settlement negotiations, with instructions that if the parties did not settle and plaintiffs were not willing to waive a jury trial, then they would commence jury selection "at 1:30 [p.m.]" Thereafter, the parties advised the judge that the case was "resolved." Under the terms of the settlement, defendant would "stipulate to liability and . . . an award of nominal damages in the amount of $500." Defendant would also "voluntarily dismiss[]"

---

[5] During the colloquy, plaintiffs' counsel acknowledged that they lacked "accounting records to show that he lost [fifty] or [five hundred] patients or that the revenue decreased."

13

the remaining counterclaims. The judge marked the case as settled and later entered an order of final judgment in accordance with the settlement.[6]

On April 19, 2019, Lee moved for attorneys' fees and costs pursuant to Rule 1:4-8 and N.J.S.A. 2A:15-59.1 on the ground that Chen had filed frivolous counterclaims. In support, Lee certified that he provided the requisite notice in letters dated May 25, 2017, and May 7, 2018, to Chen's attorney requesting the withdrawal of the counterclaims "in accordance with the safe harbor clause of the Rule." On May 14, 2019, the judge denied Lee's motion. In her statement of reasons accompanying the order, the judge explained that Lee's claim that Chen's filings were frivolous was precluded by the fact that she had denied in part Lee's motion for summary judgment dismissal of the counterclaims during the course of litigation.

The order of final judgment that was ultimately entered on June 11, 2019, stated that "following a settlement on the record reached between [d]efendant and [p]laintiffs . . . on April 15, 2019[,] . . . [p]laintiffs agreed to withdraw their remaining claims with prejudice in exchange for the payment of [$500] in nominal damages." This appeal followed.

---

[6] Despite the settlement, no one contends the present appeal by Chen is moot. We therefore presume the settlement impliedly preserved the right to appeal the issues before us.

14

A-4544-18

On appeal, Lee argues the judge erred in dismissing the libel per se, slander,[7] trade libel, and tortious interference counts; erred in failing to empanel a jury to "proceed[] to trial" on the surviving counts and instead "limit[ing] . . . plaintiffs' ability to recover to [$500] maximum by engaging in a qualitative weighing of plaintiffs' evidence"; and erred in denying the application for sanctions under the frivolous litigation statute based on Chen's purported frivolous counterclaims.

II.

We review a grant of summary judgment applying the same standard used by the trial court. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016). That standard is well-settled:

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is

---

[7] Because plaintiffs voluntarily dismissed the slander count in the trial court, they are barred from challenging the dismissal of that count on appeal. See Mack Auto Imports, Inc. v. Jaguar Cars, Inc., 244 N.J. Super. 254, 258 (App. Div. 1990) ("[A] voluntary dismissal terminates the action and may not be appealable so as to reinstate what has been voluntarily terminated . . . ."). We note however that "Internet postings, if defamatory, constitute[] libel rather than slander . . . ." W.J.A. v. D.A., 210 N.J. 229, 236 (2012).

entitled to a judgment as a matter of law, summary judgment must be granted.

[Ibid. (quoting R. 4:46-2(c)) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).]

If there is no genuine issue of material fact, we must "decide whether the trial court correctly interpreted the law."  DepoLink Ct. Rep. & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).  We review issues of law de novo and accord no deference to the trial judge's legal conclusions.  Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

"[E]very motion for summary judgment requires the court, trial or appellate, to review the motion record against not only the elements of the cause of action, but also the evidential standard governing that cause of action."  Bhagat v. Bhagat, 217 N.J. 22, 26-27 (2014).  To that end, we turn our discussion to the governing principles in a defamation action that "does not involve a public figure or a matter of public concern, but rather defamatory statements concerning private . . . parties."  Nuwave Inv. Corp. v. Hyman Beck & Co., Inc., 221 N.J. 495, 498 (2015).

"The threshold issue in every defamation action is whether the language in question is reasonably susceptible of a defamatory meaning."  Lutz v. Royal

16

Ins. Co. of Am., 245 N.J. Super. 480, 492 (App. Div. 1991) (citing Romaine v. Kallinger, 109 N.J. 282, 290 (1988)). "The terms 'libel per se' and 'libel per quod' have long been used to differentiate between writings defamatory on their face and those defamatory solely in the light of extrinsic facts." Lawrence v. Bauer Publ'g & Printing, 89 N.J. 451, 459 (1982). "A determination of whether certain language is defamatory on its face rests within the power of the trial court." Ibid. "Only when the court finds the words to be capable of both a defamatory and a nondefamatory meaning does a question of fact arise for the jury to decide." Ibid. Therefore, a trial court's ruling that statements are "libelous per se" means "the court found as a matter of law that the statements were not reasonably susceptible of a nondefamatory interpretation." Ibid.

"Words that clearly 'sound to the disreputation' of an individual are defamatory on their face" and thus "libelous per se, i.e., not susceptible of a nondefamatory interpretation." Id. 459-60 (quoting Shaw v. Bender, 90 N.J.L. 147 (E.& A. 1917)). "A false statement is defamatory if it exposes a person to hatred, contempt or ridicule, or subjects him to a loss of good will and confidence of others, or so harms his reputation as to deter others from associating with him." Lutz, 245 N.J. Super. at 492 (citing Romaine, 109 N.J. at 289).

"A statement made in the context of and pertaining to a person's trade, profession or business, such as in this case, is actionable if the statement is made with reference to 'a matter of significance and importance' relating to the manner in which the subject of the statement carries out his trade, profession or business." Id. at 492-93 (quoting Prosser and Keeton, Law of Torts, § 112 at 791 (5th ed. 1984)). To that end, to establish the elements of trade libel, a plaintiff must show: "1) publication; 2) with malice; 3) of false allegations concerning [plaintiff's] property, product or business; and 4) special damages, i.e.[,] pecuniary harm." Mayflower Transit, L.L.C. v. Prince, 314 F. Supp. 2d 362, 378 (D.N.J. 2004).

There are three "categories of damages in a defamation action" for which recovery is permitted. Nuwave Inv. Corp., 221 N.J. at 499. They "are: (1) compensatory or actual, which may be either (a) general or (b) special; (2) punitive or exemplary; and (3) nominal." W.J.A., 210 N.J. at 239 (quoting Prosser and Keeton, § 116A at 842 (footnote omitted)). Compensatory or "[a]ctual damages, as the name implies, refers to the real losses flowing from the defamatory statement." Ibid. (quoting Prosser and Keeton, § 116A at 843). "It 'is not limited to out-of-pocket loss,' but includes 'impairment to reputation and standing in the community,' along with personal humiliation, mental

18

anguish, and suffering to the extent that they flow from the reputational injury."

Ibid. (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974)).

"[P]unitive or exemplary damages may be awarded in a defamation case." Id. at 241. "Punitive damages are an exception to the general rule that damages are aimed at compensation" and "are intended to punish and deter wanton conduct." Ibid. However, "all elements of the Punitive Damages Act must be satisfied in order to sustain a punitive damages award." Ibid.; see N.J.S.A. 2A:15-5.9 to -5.17; see also Ward v. Zelikovsky, 136 N.J. 516, 542 (1994) (noting that where special damages were not established in a slander action, "punitive damage awards were also improper").

"Contained within the notion of actual damages is the doctrine of presumed damages -- the losses 'which are normal and usual and are to be anticipated when a person's reputation is impaired.'" W.J.A., 210 N.J. at 239 (quoting Prosser and Keeton, § 116A at 843 (footnote omitted)). "Presumed damages are a procedural device which permits a plaintiff to obtain a damage award without proving actual harm to his reputation." Ibid. "Among the rationales underlying the doctrine are the difficulty of proving the effects of the defamatory statement and that harm normally results from such a statement." Id. at 239-40 (citing Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472

19

U.S. 749, 760 (1985)).  "Presumed damages apply in libel cases."  Id. at 240

(citing Prosser and Keeton, § 112 at 785-86; § 116A at 843).

"Where a plaintiff does not proffer evidence of actual damage to

reputation, the doctrine of presumed damages permits him to survive a motion

for summary judgment and to obtain nominal damages, thus vindicating his good

name."  Id. at 233.  "Nominal damages are 'awarded for the infraction of a legal

right, where the extent of the loss is not shown, or where the right is one not

dependent upon loss or damage.'"  Id. at 240-41 (quoting Charles T. McCormick,

Damages, at 85 (1935)).  "Such an award is a 'judicial declaration that the

plaintiff's right has been violated,'" and "serves the purpose of vindicating the

plaintiff's character by a verdict of a jury that establishes the falsity of the

defamatory statement."  Id. at 241 (quoting McCormick, at 85).

"[P]resumed damages are not to be awarded as compensation and are not

appropriate when compensatory damages are otherwise available to the

plaintiff."  Nuwave Inv. Corp., 221 N.J. at 500.  "Compensatory damages,

however, will continue to require proof of actual damage to reputation." W.J.A.,

210 N.J. at 233.  Thus, "[t]o receive a compensatory award for reputational loss,

a plaintiff will be required to prove actual harm, pecuniary or otherwise, to his

reputation through the production of evidence."  Id. at 249.  "Awards based on

a plaintiff's testimony alone or on 'inferred' damages are unacceptable." Sisler v. Gannett Co., 104 N.J. 256, 281 (1986); see McLaughlin v. Rosanio, Bailets & Talamo, 331 N.J. Super. 303, 313 (App. Div. 2000) (explaining that a plaintiff may not prevail in a defamation action unless he or she "adduce[s] 'concrete proof' that third parties lowered their estimation of the plaintiff and that he or she suffered emotional or pecuniary harm as a result" (quoting Sisler, 104 N.J. at 281)).

Here, the judge correctly determined as a matter of law that the statements were libel per se, meaning the writings were defamatory on their face without resort to extrinsic facts. As plaintiffs themselves point out, libel is "the more general version of libel per se." Thus, libel per se is not a stand-alone cause of action. See Romaine, 109 N.J. at 290-91. Therefore, the judge properly dismissed the libel per se count as duplicative of and subsumed within the libel count.

As to permissible damages for the surviving libel count, plaintiffs were unable to provide any competent proof that Lee or the dental practice suffered any injury or economic loss as a result of Chen's posts. In addition to failing to produce any business or accounting records showing a decline in profits, Lee could not "recall the names" of patients who discontinued treating with him

21

based on the reviews, could not "recall the number" or names of persons who told him they did not want to become his patients because of the reviews, and stated that the people who told him about the negative reviews "generally . . . thought it was false." See McLaughlin, 331 N.J. Super. at 313 ("[T]here can be no defamation if the recipients of the alleged defamatory statements did not believe them.").

"[P]roof that an existing relationship has been seriously disrupted or testimony of third parties detailing a diminished reputation will be necessary to satisfy the requirement that special damages exist before a jury may award any other types of damages." Ward v. Zelikovsky, 136 N.J. 516, 540 (1994). In the absence of any competent proof of actual damages, we agree with the judge that the doctrine of presumed damages permitted plaintiffs to survive the motion for summary judgment on the libel count, but properly limited plaintiffs' recovery to nominal damages only. Nominal damages were then correctly capped at $500 in accordance with the Punitive Damages Act. See N.J.S.A. 2A:15-5.10 (defining nominal damages as "damages that are not designed to compensate a plaintiff and are less than $500").

Likewise, we agree with the judge that the absence of proof of "pecuniary harm" was fatal to the trade libel count. Mayflower Transit, L.L.C., 314 F. Supp.

2d at 378. Accordingly, summary judgment dismissal of that count was appropriate as well.

Regarding the tortious interference counts,[8] to establish such a claim, a plaintiff must prove "(1) a protected interest; (2) malice--that is, defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages." Dimaria Const., Inc. v. Interarch, 351 N.J. Super. 558, 567 (App. Div. 2001) (citing MacDougall v. Weichert, 144 N.J. 380, 404 (1996)). Failure to "demonstrat[e] that a plaintiff has suffered or will suffer damage can be fatal to a claim." Printing Mart-Morristown, 116 N.J. at 760.

Again, we agree with the judge that plaintiffs' failure to show damages was "fatal" to the tortious interference claims. Ibid. We also conclude that because plaintiffs' proof of the tortious interference claims was "precisely the same evidence" forming "the basis for [the] defamation claim," they were properly dismissed on the summary judgment motion "as duplicative of plaintiff[s'] . . . defamation claim." Lutz, 245 N.J. at 503.

---

[8] We use tortious interference in this opinion interchangeably with such expressions as intentional interference with prospective economic relations, tortious interference with prospective economic advantage or economic benefit, intentional interference with a prospective contractual relationship, and the like. Printing Mart-Morristown v. Sharp Electrs. Corp., 116 N.J. 739, 744 (1989).

 A-4544-18

Next, plaintiffs argue that "[d]espite the parties' readiness for trial" when they appeared on April 15, 2019, "the judge failed to call the jury pool and instead engaged in an impermissible summary judgment type of analysis precluded by settled authority of the [c]ourt." Plaintiffs' argument is wholly belied by the record.

During the pre-trial conference, plaintiffs' counsel informed the judge that "the only issue before the jury would be the measure of damages." Based on the judge's prior ruling that plaintiffs were limited to nominal damages,[9] the judge pointed out that "the only issue . . . for trial [would be] the quantity of nominal damages," which counsel acknowledged was capped at "$500" under the Punitive Damages Act. Given the limited dollar value involved, the judge afforded the parties an opportunity to engage in settlement negotiations before beginning jury selection, which negotiations led to the settlement of the case. Contrary to plaintiffs' assertion, the judge was prepared to empanel a jury if the parties could not reach an agreement.

Finally, plaintiffs argue the judge erred in denying their motion for sanctions based on Chen's "frivolous" counterclaims. We disagree.

_____

[9] The judge reaffirmed the prior ruling during the pre-trial conference when plaintiffs raised for the first time that the prior ruling did not preclude damages for emotional distress.

Rule 1:4-8 and the frivolous litigation statute, N.J.S.A. 2A:15-59.1, authorize sanctions, including reasonable attorney's fees and costs, against any party. The frivolous litigation statute provides that a prevailing party:

> in a civil action, either as [a] plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.
>
> [N.J.S.A. 2A:15-59.1(a)(1).]

To find "a complaint, counterclaim, cross-claim or defense" frivolous:

> [T]he judge shall find on the basis of the pleadings, discovery, or the evidence presented that either: (1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or (2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
>
> [N.J.S.A. 2A:15-59.1(b).]

Subsection (b) or Rule 1:4-8 sets forth procedural requirements, often referred to as safe harbor provisions. "One of the obligations of a party who intends to seek an award based on frivolous litigation is service of a written notice and demand that, among other things, sets forth 'with specificity' the basis

25

for his or her belief that the pleading is frivolous." Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 408 (App. Div. 2009) (quoting R. 1:4-8(b)). "The notice must be sufficiently specific and detailed to provide an opportunity to 'withdraw the assertedly offending pleadings.'" Ibid. (citations omitted). "[C]laims against parties pursuant to N.J.S.A. 2A:15-59.1 must be pursued . . . in accordance with the procedural requirements of [Rule 1:4-8.]" Ibid.

"Sanctions are not to be issued lightly . . . ." McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 499 (App. Div. 2011). We review a trial judge's decision on an application for frivolous litigation sanctions for abuse of discretion and will reverse "only if it 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Id. at 498 (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

"Where a party has [a] reasonable and good faith belief in the merit of the cause, attorney's fees will not be awarded." First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007). Instead, "an assertion is deemed 'frivolous' when 'no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable.'" United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009)

26

(quoting Perez, 391 N.J. Super. at 432).  However, "continued prosecution of a claim or defense may, based on facts coming to be known to the party after the filing of the initial pleading, be sanctionable as baseless or frivolous even if the initial assertion of the claim or defense was not."  Iannone v. McHale, 245 N.J. Super. 17, 31 (App. Div. 1990) (applying N.J.S.A. 2A:15-59.1).

Nonetheless,

> a pleading cannot be deemed frivolous as a whole nor can an attorney be deemed to have litigated a matter in bad faith where, as in this case, the trial court denies summary judgment on at least one count in the complaint and allows the matter to proceed to trial.
>
> [Zahabian, 407 N.J. Super. at 394.]

Here, we are satisfied that the judge was correct in denying plaintiffs' application for frivolous litigation sanctions based on the judge having previously denied summary judgment on four of defendant's counterclaims, specifically, counts one, three, four, and five.[10]  Plaintiffs now challenge the

---

[10]  In denying the application for sanctions, the judge also relied in part on procedural grounds, noting that plaintiffs had failed to address with specificity each of the counterclaims deemed frivolous in their prior notice and demand letters dated May 25, 2017, and May 7, 2018, as required by Rule 1:4-8(b).

judge's denial of their cross-motion, asserting they were entitled to summary judgment dismissal of those counterclaims.[11]

In count one, Chen asserted a tortious interference claim in connection with Lee's ultimate refusal to lease the premises to Delvalle, "causing . . . Delvalle to not purchase . . . Chen's dental business." Chen asserted Lee's "actions intentionally and without justification or excuse and with malice, tortiously interfered with [her] business contracts, resulting in damages to [her] including diminished profits and business reputation." See Lamorte Burns & Co. v. Walters, 167 N.J. 285, 305-06 (2001) ("To prove its claim, plaintiff must show that it had a reasonable expectation of economic advantage that was lost as a direct result of defendants' malicious interference, and that it suffered losses thereby.").

In count five, Chen asserted that Lee breached an implied covenant of good faith and fair dealing "by refusing to lease the [p]remises to . . . Delvalle, by demanding an unreasonable and unjustified $80,000 payment from . . . Chen in order for . . . Lee to agree to lease the [p]roperty to . . . Delvalle, and by unreasonably withholding the [l]ease to . . . Delvalle" after assuring Chen "that

---

[11] As previously stated, defendant voluntarily withdrew counts six and seven and the judge granted plaintiffs' motion as to count two.

he would provide a new lease" to Delvalle "despite . . . Chen's [premature] termination of the [l]ease."  In support, Chen alleged that in April 2013, she and Lee "had discussions that . . . Chen was seeking to sell her dental practice to another dentist who would lease the [p]remises," and Lee knew "that the sale of [her] practice was entirely dependent on her buyer securing a lease for the [p]remises."  See Sons of Thunder v. Borden, Inc., 148 N.J. 396, 420 (1997) ("In every contract there is an implied covenant that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing.'"  (quoting Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 130 (1965))).

In his deposition testimony, Lee averred that Chen brought Delvalle to him "as a possible new tenant" after he "release[ed] her from the lease contract." Lee admitted negotiating "[t]erms" and "conditions of a lease" with Delvalle but said he never entered into a lease with Delvalle because "there were other possible tenants at the time" who were willing to accept terms that were more favorable to Lee.  Lee specified that negotiations with Delvalle "fell through . . . because [Lee] asked [Delvalle] to pay about $80,000 in exchange for the use of [his] equipment," and Delvalle refused.  Lee stated he requested

29

the $80,000 payment sometime after May 14, 2013.  Notably, Lee acknowledged knowing that Chen was trying to sell her practice to Delvalle.  However, he denied knowing that the sale of Chen's practice was contingent on him leasing the space to Delvalle.

When the summary judgment motion was adjudicated, the discovery included Delvalle's deposition testimony in which Delvalle acknowledged executing a purchase proposal on April 29, 2013, to purchase Chen's practice, and indicated that he intended to take over Chen's lease with Lee.  However, he could not recall whether Lee's request for $80,000 caused the purchase with Chen to fail.  On the other hand, in an affidavit, Delvalle's attorney averred that the purchase of Chen's practice was "contingent upon [Delvalle] obtaining a new lease or an assignment of the current lease" from Lee and that during an April 25, 2013 meeting with Delvalle, Chen, and Lee, they "reached an agreement" on the terms of the lease.  However, after Lee "changed the terms of the proposed lease with . . . Delvalle," to include the requirement that Delvalle "pay an additional $80,000 prior to occupancy," Delvalle "decided not to purchase . . . Chen's practice."

The judge ultimately denied plaintiffs summary judgment on counts one and five because there were disputed material facts.  See Brill, 142 N.J. at 540.

However, the judge determined there was no dispute that after Lee accepted Chen's notice of cancellation of the lease, there was no lease between Lee and Chen and Chen therefore had no "[l]easehold [interest] to assign."[12] Chen asserted she intended to transfer a leasehold interest in Lee's property in the transfer of assets between Chen and Delvalle contemplated in connection with the sale of her practice. To that end, Lee, Chen, and Delvalle met to discuss terms. However, according to Chen, Lee decided to forego an assignment and instead enter into his own lease with Delvalle, which lease never came to fruition.

We discern no error in the judge's ruling that disputed material facts precluded a grant of summary judgment as to the interference count because "an enforceable contract" is not required "before an action for intentional interference with a prospective economic relationship can lie . . . ." Printing Mart-Morristown, 116 N.J. at 751. Failure of an expected transaction to come to fruition as a result of wrongful interference by a third party would, if proven, constitute a compensable tort. On the other hand, an action for breach of implied covenant of good faith and fair dealing cannot be maintained in the absence of

---

[12] In fact, the judge granted summary judgment to plaintiffs on count two alleging breach of the lease agreement "because . . . defendant had terminated the [l]ease" as of June 13, 2015.

a contract.  See Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001) ("A covenant of good faith and fair dealing is implied in every contract in New Jersey.").

In count three, Chen asserted that "[p]laintiffs breached the [l]ease by failing to return the [$3000] security deposit" after "inspect[ing] the [p]remises" and "confirm[ing] . . . that the [p]remises was being left, at the end of the [l]ease, in . . . good condition" in compliance "with the terms of the [l]ease."  See Ringwood Assocs., Ltd. v. Jack's of Route 23, Inc., 153 N.J. Super. 294, 309 (Law Div. 1977) ("Under New Jersey law a lease is like any other written contract.  When either party fails to perform a covenant, the injured party may bring an action for damages for breach of covenant."); see also N.J.S.A. 46:8-21.1 (regulating return of security deposits).  In count four, Chen asserted unjust enrichment by virtue of Lee's failure to return the security deposit despite requests from Chen and her attorney.  See VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994) ("To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.").

Chen produced the lease, proof of payment of the security deposit, and the requisite sixty-day notice of cancellation.  In contrast, Lee testified at his

32                                                                              A-4544-18

deposition that Chen had failed to make utility payments and failed to pay rent increases as required under the lease. Lee also disputed that Chen had paid rent for the final period of the lease. Thus, the judge determined there were disputed material facts and denied plaintiffs summary judgment on counts three and four. We discern no error in that determination. In any event, because the denial of summary judgment on only one count is sufficient to withstand a frivolous litigation claim, we find no abuse of discretion in the judge's refusal to impose sanctions.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4544-18